OPINION
{ ¶ 1} Plaintiff-appellant, Jeffrey M. Tippie, appeals the judgment of the Geauga County Court of Common Pleas, Domestic Relations Division, finding him in contempt of court and sentencing him to sixty days in jail. We affirm the judgment of the lower court.
{ ¶ 2} Tippie and defendant-appellee, Mary Grace Patnik, were married on October 21, 2001, in Gates Mills, Ohio. No children were born as issue of the marriage. Tippie filed for divorce in the Geauga County Court of Common Pleas, Domestic Relations Division, on March 25, 2002.
{ ¶ 3} The matter came before a three day hearing before the magistrate, which ended on November 5, 2002. Relevant to the issues on appeal, the magistrate made the following findings of fact, related to the division of marital property and debt:
{ ¶ 4} "[P]rior to the marriage, Husband purchased * * * gold and silver coins and bars from The Ohio Bank. These assets were purchased by Husband with Wife's money. These are wife's pre-marital assets.
{ ¶ 5} "A safe is located in the marital home. When Husband removed items from the home and put them in storage, he removed things from the safe.
{ ¶ 6} "Both parties testified that Wife has silverware that was her family's and that was kept in the safe. The silverware is wife's separate property. It was missing after Husband removed items from the safe. Wife testified that Husband has it. Husband denied that he has it. Husband's testimony is not credible."
{ ¶ 7} The Magistrate's decision was filed without objection on January 21, 2003.
{ ¶ 8} On February 6, 2003, the trial court adopted the magistrate's findings of fact and conclusions of law as its own and entered its judgment entry granting the divorce. As part of the trial court's judgment entry of divorce, the trial court ordered that "within thirty days of this final entry of divorce, the personal property of the parties, including Wife's silverware, shall be exchanged as set forth in the magistrate's decision."
{ ¶ 9} In addition to the court's order relating to the return of each party's respective personal property, the court found Tippie in contempt of court on the basis of a Motion to Show Cause filed by Patnik on April 26, 2002, which arose from his violation of a restraining order granted in favor of both parties. Tippie violated a previously issued restraining order by taking Patnik's personal vehicle from a restaurant parking lot without her consent, and by entering the marital home, where Patnik was living, and disconnecting the telephone. The court also ordered Tippie to pay attorney fees in the amount of $600 in connection with this motion. Tippie was sentenced to 30 days in the Geauga County Jail, but was given the opportunity to purge the sentence by reimbursing to Patnik any costs incurred as the result of taking her car, and as a result of Tippie disconnecting Patnik's phone.[1]
 { ¶ 10} On March 10, 2003, Patnik filed another Motion to Show Cause, alleging that Tippie failed to return items of personal property as ordered in the divorce decree, including a computer system, the gold and silver bars and coins, the silverware, and a Labrador Retriever; by failing to pay his half of certain marital debts; by failing to sign over titles to a Jaguar automobile and a Harley-Davidson motorcycle and returning the keys to these vehicles as ordered; by failing to execute a quit-claim deed to the marital residence as ordered; and by failing to pay attorney fees in connection with the April 26, 2002 motion to show cause. This matter was scheduled for hearing on April 30, 2003.
{ ¶ 11} On April 25, 2003, Tippie filed a Chapter 7 Bankruptcy petition in the United States Bankruptcy Court, Northern District of Ohio. On April 29, 2003, Tippie filed a "Notice of Suggestion of Stay" with the trial court. As a result, the magistrate issued an order staying the proceedings on the Motion to Show Cause, pending resolution of the bankruptcy petition.
{ ¶ 12} On November 25, 2003, Patnik filed a motion to reset the hearing on her March 10, 2003 motion to show cause. Attached to this order was a copy of an order issued by the United States Bankruptcy Court, dated October 23, 2003, granting Patnik relief from the automatic stay. The court granted Patnik's motion, and rescheduled the hearing on the Motion to Show Cause for February 5, 2004. Subsequently, Tippie filed a motion for continuance, which was granted.
{ ¶ 13} On April 14, 2004, following a hearing on Patnik's motion, the magistrate issued a decision, in which she found that Tippie had returned the Labrador Retriever and the certificates of title to the Jaguar and the Harley-Davidson motorcycle to Patnik, but only after the motion to reset the hearing on the Motion to Show Cause had been filed on November 25, 2003. The magistrate additionally found that although Tippie had extra sets of keys to the car and the motorcycle in his possession, he had failed to provide them to Patnik. As a result, Patnik, who had never possessed any keys to the motorcycle, was required to have the motorcycle towed to a repair facility to have the ignition system changed. Finally, the magistrate additionally found that Tippie had contradicted his own testimony, in which he denied any knowledge of the whereabouts of the gold and silver coins and bars and, therefore, the magistrate concluded that Tippie "either has the silver and gold coins and bars in his possession or he knows where they are."
{ ¶ 14} With respect to the computer, the magistrate stated that "[t]he parties owned only one functioning desktop computer system during their marriage, a Hewlett Packard computer. The computer system was awarded to Ms. Patnik in the divorce. In the [earlier] Magistrate's Decision, this Magistrate inadvertently referred to the computer as a `Cannon' computer, instead of a `Hewlett Packard' computer. Mr. Tippi (sic) used this mistake to his advantage. He knew that the Hewlett Packard computer was the only computer system the parties owned[,] yet he showed disdain for this Court's order and refused to give the computer to Ms. Patnik because he was ordered to give her a Cannon, not a Hewlett Packard."
{ ¶ 15} With respect to the silverware, the magistrate found as follows: "Pursuant to the Judgment Entry of Divorce, Ms. Patnik was awarded certain silverware which she had inherited from her parents. At the final divorce trial[,] Mr. Tippie testified that he did not have it and he did not know where it was. At the more recent contempt hearing, Mr. Tippie again contradicted himself with regard to the location of the silverware. The undersigned Magistrate found Mr. Tippie's testimony with regard to the location of the silverware not credible at the time of the divorce trial and still finds his testimony not credible. It is the undersigned Magistrate's finding that Mr. Tippie either has the silverware in his possession or knows where it is."
{ ¶ 16} Finally, with respect to attorney fees, the magistrate made the following relevant findings of fact: "Ms. Patnik incurred attorney fees in connection with the prosecution of her contempt motion. She incurred fees and costs in this State Court action and also in the United States Bankruptcy Court (Case No. 03-15361) in the amount of $4,731.50."
{ ¶ 17} Accordingly, the magistrate concluded that Tippie should be adjudged guilty of contempt, and that he should serve a jail sentence. However, the magistrate concluded that Tippie could purge himself of the contempt judgment by "delivering to Ms. Patnik on or before May 15, 2004, the desktop computer system, the silver and gold coins and bars, and the silverware. As a final purge condition, Mr. Tippie should be required to reimburse Ms. Patnik the costs she incurred in replacing the Harley Davidson ignition system, including the towing of the vehicle. The reimbursement of this money should occur within ten (10) days of Ms. Patnik's production of documentation of the costs involved." The magistrate added the following in a footnote with respect to the computer system, the gold and silver coins and bars, and the silverware: "The parties can certainly reach an agreement between themselves whereby Mr. Tippie keeps the property currently in his possession and pays Ms. Patnik an agreed upon sum for the property." The magistrate also concluded that "Mr. Tippie should be required to pay Ms. Patnik the sum of $4,731.00 * * * for attorney fees incurred in the prosecution of the within matter," as well as associated costs.
{ ¶ 18} On April 20, 2004, Tippie filed a motion for enlargement of time to file objections to the April 14, 2004 Magistrate's Decision, which was granted. On May 28, 2004, Tippie filed a "Reply to Magistrate's Decision and Motion for Stay of Proceedings." In this motion, Tippie alleged that the property in question, including the computer, the gold and silver bars and coins, the silverware, and "other personal property" were pre-petition obligations, which had been discharged in the bankruptcy case.
{ ¶ 19} On June 4, 2004, the trial court adopted the magistrate's decision in full, finding that Tippie's sole objection, which contended that the debts were discharged in bankruptcy, was not supported by any evidence in the record. As a result, the trial court concluded that Tippie's motion did not raise any cognizable objections to the magistrate's findings of fact and conclusions of law, and adopted the April 14, 2004 Magistrate's Decision in full, finding Tippie in contempt of court and sentencing him to ten days in the Geauga County Jail.
{ ¶ 20} In so doing, the court gave Tippie the opportunity to purge himself of the contempt "by delivering to Ms. Patnik on or before June 15, 2004, the desktop computer system, the silver and gold coins and bars, and the silverware," and by ordering the reimbursement of the costs Patnik incurred to replace the Harley Davidson ignition system, including towing, "within ten (10) days of Ms. Patnik's production of documentation of the costs involved." The court also ordered that the payment of attorney fees in the amount of $4,731.00 could be paid in lump sum or in payments; however, the final payment was ordered to be made no later than December 31, 2004.
{ ¶ 21} On August 6, 2004, Patnik filed a "Motion to Impose Sentence," with the court. Attached to the motion was an affidavit, which averred that Tippie had returned the computer system, but had failed to return the remaining items.
{ ¶ 22} On October 1, 2004, the trial court issued a judgment, finding Tippie in contempt, and ordering that he serve ten days in the Geauga County Jail, with work release.
{ ¶ 23} On February 2, 2005, Patnik filed another Motion to Show Cause, again alleging that Tippie had failed to return the silverware and the gold and silver bars and coins, and additionally alleging that Tippie had failed to pay her attorney fees by December 31, 2004, as ordered by the court. A hearing on this motion was scheduled for May 2, 2005.
{ ¶ 24} On April 29, 2005, Tippie filed a Motion for Continuance with the court, which was granted. The hearing was rescheduled for June 8, 2005.
{ ¶ 25} On May 24, 2005, Tippie filed a jury demand, which was subsequently denied. The matter proceeded to a hearing on June 8, 2005, in which both parties testified. On June 27, 2005, the magistrate issued her decision. The magistrate found as follows:
{ ¶ 26} "It is undisputed that Mr. Tippie has failed to return to Ms. Patnik the silver and gold coins and bars or the silverware. It is also undisputed that Mr. Tippie has failed to make any payments to Ms. Patnik of the sums owed her * * * for attorney fees * * *. At trial, Mr. Tippie offered no reason for failing to make any payments to Ms. Patnik of the sums he owes her. Mr. Tippie is gainfully employed * * * [and] is capable of paying the money owed to Ms. Patnik * * *. During cross-examination, in defense of his failure to comply with this court's prior orders, Mr. Tippie testified that he has not returned the gold and silver coins and bars and the silverware because he does not have them in his possession. Although Mr. Tippie may or may not have the above named items in his possession, I find that he did have them at one time and that he has knowledge of what happened to them * * *. Mr. Tippie's failure to timely pay the sums owed Ms. Patnik was done without good cause and constitutes contempt of this Court's prior orders. Mr. Tippie's failure to return the silver and gold coins and bars and silverware was done without good cause and constitutes contempt of this Court's prior orders. This is a second offense. If found guilty of a second offense, a jail sentence of sixty (60) [days] and/or a fine of $500 may be imposed."
{ ¶ 27} On the basis of these findings of fact, the magistrate recommended that Tippie be adjudged guilty of contempt and ordered to serve jail time in the Geauga County Jail. The magistrate further concluded that the sentence should be suspended, provided Tippie purge himself of the contempt by "delivering to Ms. Patnik on or before July 31, 2005[,] the silver and gold coins and bars and the silverware, or by paying her an amount equal to their worth. As an additional purge condition, Mr. Tippie should pay to Ms. Patnik the sum of $4,731 on or before August 31, 2005." The magistrate additionally concluded that Tippie should be required to pay the sum of $1,228.50 for attorney fees in connection with this particular motion, and costs, finding that these costs were reasonable.
{ ¶ 28} On July 8, 2005, Tippie filed objections to the magistrate's decision. On July 27, 2005, the trial court overruled Tippie's objections and adopted the Magistrate's Decision by judgment entry, finding him in contempt, and ordered him to serve sixty days in jail. The judgment entry provided that the jail sentence would be suspended if Tippie purged himself of contempt "by delivering to Ms. Patnik on or before August 31, 2005, the silver and gold coins and bars and the silverware, or by paying her an amount equal to their fair market value. As an additional purge condition, Mr. Tippie shall pay to Ms. Patnik the sum of $4,731 on or before August 31, 2005." Finally, the trial court ordered that Tippie pay Patnik $1,288.50 by October 31, 2005, for attorney fees incurred in the instant matter.
{ ¶ 29} Tippie timely appealed, assigning the following as error[2]:
{ ¶ 30} "The trial court erred in failing to afford appellant with the constitutional protections available to a criminal defendant in a contempt proceeding."
{ ¶ 31} In his sole assignment of error, Tippie avers that the contempt proceeding was criminal, in that it was punitive in nature and could not be remedied by future compliance. In particular, Tippie attacks the trial court's finding of contempt on several fronts: First, Tippie avers that the trial court erred in denying his motion for jury trial, since the contempt sanction was criminal in nature; second, Tippie argues that the trial court committed prejudicial error by compelling him to testify against himself, in violation of his Fifth Amendment privilege against self incrimination, because of the criminal nature of the contempt proceedings; finally, Tippie claims that the contempt motion was of the nature of a criminal contempt, since the evidence showed that he was unable to "purge" because he did not have possession of the items. We disagree.
{ ¶ 32} Contempt of court has been variously defined as "disobedience of an order of a court," and "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Denovchek v. Bd. ofTrumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 15 (citations omitted). Contempt powers are considered inherent in the court, and considered as necessary to the proper exercise of judicial functions. Id. Since the primary purpose of contempt proceedings is to preserve the authority and proper functioning of the court, we review the trial court's decisions in contempt proceedings under an abuse of discretion standard. Id. at 16; Unger v. Unger, 12th Dist. No. CA2003-10-013, 2004-Ohio-7136, ¶ 26
(citations omitted). An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169 (citation omitted).
{ ¶ 33} It is well-settled that "[c]ontempt proceedings are consideredsui generis," in that they are considered neither wholly civil nor criminal in nature. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253 (citations omitted); Denovchek, 36 Ohio St.3d, at 16. However, courts have found it necessary to classify contempt proceedings aseither civil or criminal in nature, since criminal contempt proceedings implicate "many of the significant constitutional safeguards required in criminal trials." Brown, 64 Ohio St.2d. at 252, citing State v.Kilbane (1980), 61 Ohio St.2d 201, 205.
{ ¶ 34} Reviews of a trial court's finding of contempt require a two-tiered analysis: First, "the contemptuous conduct must be examined to see whether it constituted a direct or indirect contempt. Second, the trial court's treatment of the matter must be analyzed in order to ascertain whether the contemnor was dealt with under the court's civil or criminal contempt powers." In re Cox (Dec. 23, 1999), 11th Dist. Nos. 98-G-2183 and 98-G-2184, 1999 Ohio App. LEXIS 6266, at *8, citingKilbane, 61 Ohio St.2d at 203; State v. Sandlin (1983),11 Ohio App. 3d 84, 85.
{ ¶ 35} In the instant case, neither party disputes that the contempt charges herein constituted indirect contempt. An indirect contempt is one which is "committed outside the presence of the court, but which also tends to obstruct the due and orderly administration of justice."In re Lands (1946), 146 Ohio St. 589, 595; Cox, 1999 Ohio App. LEXIS 6266, at *9 (citation omitted). R.C. 2705.02 to R.C. 2705.10 provide guidance to courts with regard to matters constituting indirect contempt. In re Caron (2000), 110 Ohio Misc.2d 58, 102. R.C. 2705.02
classifies certain acts which may constitute indirect contempt, and prohibits, in relevant part, the "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." R.C. 2705.02(A).
{ ¶ 36} Since indirect contempt, by its nature, occurs out of the presence of the court, R.C. 2705.03 requires certain procedural safeguards, including a written notice of the charge, the opportunity to be heard, and the opportunity for the accused contemnor to be represented by counsel at the hearing on the issues. Cox, 1999 Ohio App. LEXIS 6266, at *10.
{ ¶ 37} A review of the record indicates that Tippie was provided with written notice of the charges against him and a hearing. Furthermore, Tippie was represented by counsel at the hearing. Contrary to Tippie's assertions, the affidavit attached to Patnik's motion to show cause alleges that Tippie failed to return the silver and gold bars and coins and the silverware, and failed to pay the attorney's fees related to Patnik's prior show cause motions, as required by the court's June 4, 2004 judgment entry. Thus, if the contempt charge against Tippie is indeed civil in nature, the aforementioned safeguards have been satisfied.
{ ¶ 38} We next must determine whether the nature of the contempt was civil or criminal, to determine if any additional constitutional protections apply. In addition to the aforementioned safeguards, a criminal contemnor is afforded certain additional rights including 1) reasonable notice of the object of the hearing; 2) the right to cross-examine witnesses; 3) the right to present testimony on his own behalf; 4) the right not to be compelled to testify against himself, and 5) the right to be represented by counsel. Randall v. Randall (July 9, 1982), 2nd Dist. No. 1646, 1982 Ohio LEXIS 13663, at *6-*7, citingIn re Neff (1969), 20 Ohio App. 2d 213, 238. In order to find a defendant guilty of a criminal contempt, a higher evidentiary burden, i.e., proof beyond a reasonable doubt, is required. Brown,64 Ohio St.2d at 252.
{ ¶ 39} Courts distinguish civil and criminal contempts in several important respects. "While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment." Id. at 253 (citations omitted); Shillitani v. UnitedStates (1966), 384 U.S. 364, 369. If the sanctions are primarily for reasons benefiting the complainant and are remedial and coercive in nature, the contempt is civil in nature. Brown, 64 Ohio St.2d at 253;Devonchek, 36 Ohio St.3d at 16. In the context of a civil contempt proceeding, prison sentences are conditionally imposed, and "the contemnor is said to carry the keys of his prison in his own pocket," and the sentence will be suspended or terminated if the contemnor complies with the court's order. Brown, 64 Ohio St.2d at 253. See alsoMcComb v. Jacksonville Paper Co. (1949), 336 U.S. 187, 191 ("Civil * * * contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.")
{ ¶ 40} Criminal contempt, on the other hand, implies a purely punitive aspect. It is not "a remedy coercive in its nature," but rather, is "punishment * * * to vindicate the authority of the law and the court." Brown, 64 Ohio St.2d at 254; Bd. of Trustees, Newbury Twp. v.Pracker, (Sept. 12, 1986), 11th Dist. No. 1249, 1986 Ohio App. LEXIS 8262, at *6-*7. Thus, a key aspect of a civil contempt as opposed to one that is purely criminal, is the opportunity for the contemnor to purge himself of the contempt sanction, and the discontinuation of the sanction once compliance is achieved. In re Purola (1991),73 Ohio App.3d 306, 312, (citations omitted).
{ ¶ 41} Notwithstanding the statement in the magistrate's decision that "[i]t has been proven beyond a reasonable doubt that Mr. Tippie is in contempt," which would seem to imply that the sanction imposed was for criminal contempt, a review of the trial court's order convinces us that the purpose of the trial court was to impose a contempt sanction in order to compel Tippie to comply with the court's prior order to return specific property to Patnik.
{ ¶ 42} The judgment entry states that "[t]he jail sentence shall be suspended provided Mr. Tippie purge himself of contempt." The trial court further provided the conditions under which Tippie could purge himself of the contempt charge, specifically "by delivering to Ms. Patnik on or before August 31, 2005, the silver and gold coins and bars and the silverware, or by paying her an amount equal to their fair market value. As an additional purge condition, Mr. Tippie shall pay to Ms. Patnik the sum of $4,731 on or before August 31, 2005." As stated previously, civil contempt applies to "those violations which are on the surface offenses against the party for whose benefit the order was made." Cox, 1999 Ohio App. LEXIS 6266, at *10 (citation). Thus, since the primary purpose of the sanction was to coerce Tippie to return the missing property awarded to Patnik in the divorce decree, or the fair market value thereof, this contempt sanction was civil in nature, and thus, Tippie was not entitled to a trial by jury.[3]
 { ¶ 43} We are likewise unconvinced by Tippie's argument that the contempt sanction somehow becomes criminal, merely because Patnik failed to prove that Tippie was able to return the silverware and the coins.
{ ¶ 44} As an initial matter, we note that the trial court made the initial finding that Tippie had, at a minimum, knowledge of the whereabouts, if not actual possession, of the missing items in the January 21, 2003 magistrate's decision which was adopted without objection in the trial court's final decree of divorce issued on February 6, 2003. At that time, it was ordered that "the personal property of the parties, including Wife's silverware, shall be exchanged as set forth in the Magistrate's Decision." The magistrate made essentially identical findings of fact and conclusions of law with regard to the missing items in her April 14, 2004 decision on Patnik's Motion to Show Cause, which was initially filed on March 9, 2003. The trial court adopted the magistrate's findings of fact and conclusions of law without objection on June 4, 2004. It is well-settled that a failure to timely object to a magistrate's decision precludes a party from "assigning as error on appeal the trial court's adoption" of the magistrate's findings of fact and conclusions of law results in a waiver of these issues for the purposes of appeal. Civ.R. 53(E)(3)(b);State ex rel. Booher v. Honda of Am. Mfg., Inc., 88 Ohio St.3d 52,53-54, 2000-Ohio-269; Planin v. Planin, 11th Dist. No. 2005-G-2644,2006-Ohio-2933, at ¶ 19.
{ ¶ 45} Furthermore, since neither the final divorce decree nor the judgment entry adopting the magistrate's earlier finding of contempt were appealed, the issue of Tippie's possession and/or knowledge of the whereabouts of the coins and bars and the silverware is res judicata. See Lasko v. Gen. Motors Corp., 11th Dist. No. 2002-T-0143, 2003-Ohio-4103, at ¶ 15 (issue preclusion, or collateral estoppel, is an aspect of res judicata preventing "a question that has been actually and necessarily determined by a court of competent jurisdiction" in an earlier cause of action from being relitgated by the same parties in a later cause of action) (citation omitted).
{ ¶ 46} Even if this issue had not previously been decided, Tippie's argument would nevertheless fail. In contempt proceedings, "impossibility of compliance is an affirmative defense for which the alleged contemnor has the burden of proof." Carter v. Carter (Nov. 23, 1994), 2nd Dist. Nos. 14409, 14530, 14574, 1994 Ohio App. LEXIS 5215, at *32 (citation omitted) (emphasis added). Although Tippie alleged that he did not have possession of the silverware and the bars and coins, his own prior testimony indicated he at least had knowledge of their whereabouts, if not actual possession. Moreover, even if Tippie had proven he had no current knowledge of the whereabouts of these items, the court offered him the option of purging the contempt by instead giving Patnik the fair market value of the items.
{ ¶ 47} We also note that the trial court did not support its finding of contempt solely on the magistrate's finding that Tippie had failed to return the gold and silver bars, and the silverware as ordered without justifiable excuse, but also based its judgment on Tippie's failure to abide by the trial court's order requiring him to pay attorney's fees previously incurred. The failure to pay attorney's fees, as ordered by the court, standing alone, is sufficient justification to support a civil contempt judgment. See Goode v. Goode (Aug. 3, 1995), 10th Dist. No. 95APF01-63, 1995 Ohio App. LEXIS 3201, at *9 (citation omitted).
{ ¶ 48} Our review of the relevant judgment entries indicates that there was uncontroverted evidence supporting Tippie's ability to pay Patnik the amounts necessary to make her whole, including evidence of his gainful employment at two separate jobs, his ownership interest in a business, and his own testimony that he did not contribute to the mortgage payment on the house in which he currently lives, he cannot now claim that it is impossible to comply with the court's order. SeePugh v. Pugh (1984), 15 Ohio St.3d 136, 140 (in a contempt proceeding, it is not necessary for the complaining party to allege the ability of the alleged contemnor to pay the money, rather it is the burden of the contemnor, "by allegation and proof, to establish hisinability") (citation omitted) (emphasis sic). Tippie has failed to do so. Thus, the trial court did not abuse its discretion by finding Tippie guilty of civil contempt.
{ ¶ 49} Tippie's sole assignment is without merit. We affirm the judgment of the Geauga County Court of Common Pleas, Domestic Relations Division.
[1] Despite the trial court's finding Tippie in contempt, there is no evidence on the record that Tippie ever served this first 30-day sentence. Nor could we find evidence on the record that the contempt was purged. R.C. 2705.05(A) provides, "[i]f the accused is found guilty [of a contempt], the court may impose any of the following penalties: (1) For a first offense * * * a definite term of imprisonment of not more than thirty days in jail; (2) for a second offense, * * * a definite term of imprisonment of not more than sixty days in jail." While the statute does not define offense, it has been held that "[i]t is the final judgment which determines whether there is a first or second offense, and before one can be charged with a second offense[,] the first proceeding must have resulted finally in sustaining conviction * * * the word `offense' being equivalent to the word `conviction.'"Staniforth v. Ohio (1927), 24 Ohio App. 208, at the syllabus. The court's finding of contempt contained in the February 6, 2003 judgment entry of divorce, absent evidence on the record that this contempt had been purged, is the first contempt offense for the purpose of this analysis. See Record Pub. Co. v. Kainrad (Sept. 30, 1988), 11th Dist. No. 1740, 1988 Ohio App. LEXIS 3936, at *6. ("It is a well-established principle of law that a court speaks through its journal entries.")
[2] On September 30, 2005, this court granted Tippie's Motion to Stay Execution of his contempt sentence pending the resolution of his appeal.
[3] A defendant in a criminal contempt case "has the qualified right to a jury trial." Caron, 110 Ohio Misc. 2d at 117. Here, Tippie was arguably subject to ninety days in jail for noncompliance with the trial court's order, the penalty prescribed in R.C. 2705.05 for a third or subsequent offense. See 2705.05(A)(3). It has been held that "[t]he penalty provided in R.C. 2705.05 renders contempt of court a petty offense in the constitutional sense." State v. Weiner (1974),37 Ohio St.2d 11, at paragraph two of the syllabus; Clark Rubber Plastics Co.v. United Rubber, Cork, Linoleum Plastic Workers of Am. (Jun. 13, 1977), 11th Dist. No. 6-005, 1977 Ohio App. LEXIS 8248, at *2 (citation omitted). Thus, even had we concluded that this had been a criminal contempt matter, Tippie's "right" to a jury trial would not have attached under the circumstances.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.