PER CURIAM OPINION
{¶ 1} This action in prohibition is presently before this court for consideration of the motion to dismiss of respondent, Judge Ted Klammer of the Lake County Probate Court. As the primary grounds for this motion, respondent maintains that the petition of relator, Jacqueline Adams, fails to state a viable claim for the requested relief because her own allegations support the conclusion that respondent has not exceeded the scope of his jurisdiction in the underlying case. For the following reasons, this court holds that the motion to dismiss has merit.
 {¶ 2} Our review of relator's petition indicates that her prohibition claim is based on the following basic allegations. In March 1995, relator initiated the underlying case in the Lake County Probate Court by filing an application to be appointed the guardian of the estate of her mother, Bertina Hards. After conducting an oral hearing on the matter, Judge Fred V. Skok, respondent's predecessor in the office of Probate Judge, granted the application. Upon accepting the appointment and posting the required bond, relator continued to serve as the guardian of her mother's estate until February 2002.
 {¶ 3} In February 1997, relator submitted an application to expend certain funds of the estate for the purpose of pursuing a legal action against a brokerage firm. Again, Judge Skok granted relator's application, and she hired the Michael A. Shore Company to pursue the action. However, approximately three years later, a dispute arose as to the amount of fees owed by the Hards Estate to that company. Both the company and relator submitted briefs before Judge Skok on the fee issue. Ultimately, in March 2001, Judge Skok released a judgment in which he found in favor of the company.
 {¶ 4} Within days after the issuance of the foregoing judgment, relator submitted a number of motions, including one for a new trial and one for relief from that judgment under Civ.R. 60(B). In response, the Michael A. Shore Company filed various motions, including one to remove relator as guardian of the estate. In regard to relator's requests for a new trial and relief from judgment, Judge Skok granted both motions and vacated the March 2001 judgment. As to the parties' remaining motions, Judge Skok appointed Attorney Richard Spotz to sit as a master commissioner and make a recommendation concerning the disposition of the motions.
 {¶ 5} After conducting an evidentiary hearing on the pending motions in October 2001, Attorney Spotz rendered a report in which he recommended, inter alia, that the Michael A. Shore Company not be awarded any additional fees. Once the company and relator had both objected to Attorney Spotz's report, Judge Skok rendered a new judgment in February 2002. Under this judgment, Judge Skok overruled all objections to the report and adopted Attorney Spotz's recommendations under Civ.R. 53(E)(4). In addition to denying the company's request for additional fees, Judge Skok ordered that relator be removed as the guardian of her mother's estate, but allowed her to still be the guardian of the person. Attorney Russell Meraglio was appointed as the new guardian of the estate.
 {¶ 6} Twenty days following the release of the February 2002 judgment, Bertina Hards died. Relator was then appointed as the administrator of her mother's remaining estate by the Geauga County Probate Court. No notice of Hards' death was given to the Lake County Probate Court until October 2002.
 {¶ 7} Within ten days after Hards' death, Attorney Spotz filed an application for the payment of fees covering the services he had rendered as master commissioner in the case. Without benefit of an oral hearing, Judge Skok released a separate judgment in March 2002, under which the application for fees was expressly granted and relator was authorized to pay Attorney Spotz the sum of $11,855 from the guardian estate.[1]
 {¶ 8} Relator immediately appealed the March 2002 judgment to this court in In re Guardianship of Hards, 11th Dist. No. 2002-L-054, 2003-Ohio-4224. As part of our decision in that appeal, we held that the granting of Attorney Spotz's fee application had been erroneous because no evidence had been presented to Judge Skok concerning the reasonableness of the requested fees for the services as master commissioner. In light of this holding, this court remanded the case to the Lake Court Probate Court for the purpose of conducting an evidentiary hearing on the "reasonableness" issue.
 {¶ 9} During the time period in which the foregoing appeal was pending before us, respondent replaced Judge Skok as the sitting Probate Judge. After Attorney Spotz had renewed his application for fees, respondent held a hearing in accordance with our order upon remand. Four days following the hearing, on October 7, 2003, respondent rendered a written judgment in which Attorney Spotz's fee request was again granted in the amount of $13,709.76. Respondent further ordered that this sum be paid as costs from the estate funds prior to the filing of the final account. As part of his discussion on this point, respondent noted that relator's counsel had argued during the hearing that the fee for Attorney Spotz's services should be paid by the Michael A. Shore Company; however, respondent rejected this argument on the basis that R.C. 2101.07
specifically allows for such fees to be taxed as costs to the guardianship.[2]
 {¶ 10} According to relator, during the hearing before respondent, she expressly contended that he could not award any fees to Attorney Spotz because the Lake County Probate Court could no longer exercise jurisdiction over the funds which had belonged to her mother. Relator further asserts that she reiterated this contention in a number of motions which she submitted after the release of respondent's October 2003 judgment. However, in each instance in which she raised her jurisdictional argument, respondent overruled it and held that he did have the authority to go forward on the request for the payment of fees.
 {¶ 11} Once respondent had ruled on all of the motions relator filed following the October 2003 proceedings, she initiated the instant action in prohibition before us.[3] As the legal grounds for her sole claim, relator stated in her petition that she was entitled to a writ of prohibition because respondent had acted beyond the scope of his jurisdiction in ruling on Attorney Spotz's application for fees as part of the October 2003 judgment. Specifically, relator argued that, once her mother had passed away in February 2002, jurisdiction over her estate was automatically transferred from respondent's court to the Geauga County Probate Court, and that any "claim" Attorney Spotz had stemming from his work as a master commissioner had to be filed with the latter court for consideration. Based on this, relator requested the issuance of an order under which this court would declare respondent's October 2003 judgment void and then prohibit him from taking any steps to enforce that judgment.
 {¶ 12} As part of her instant petition, relator also alleged that Attorney Meraglio, who was appointed as the new guardian of the estate immediately prior to Hards' death, has participated in some of the subsequent proceedings, including the new hearing in October 2003. According to relator, the fact that Attorney Meraglio had performed this work made it likely that he would file an application for fees with respondent. Therefore, relator's petition also requested an order to stop respondent from going forward on any application concerning Attorney Meraglio.
 {¶ 13} In now moving to dismiss relator's entire petition, respondent challenges the propriety of her jurisdictional argument. Essentially, respondent maintains that the payment of fees to a master commissioner does not constitute a separate claim against the estate of the deceased, but instead is a court cost of the "guardian" case. In light of this distinction, he further argues that the death of the ward in the underlying proceeding did not affect his jurisdiction over the "fee" matter because he has the authority to settle all pending matters in a case even after the guardianship has ended.
 {¶ 14} At the outset of our analysis, this court would note that there is precedent under Ohio law for the general proposition that the legal effect of a guardianship ends upon the death of the ward, and that the executor of the remaining estate immediately takes title to the assets. See Simpson v. Holmes (1922), 106 Ohio St. 437. Relying on this basic precedent, relator submits that the ward's death deprives the "guardian" court of the authority to render any order concerning the distribution of any asset contained in the remaining estate. However, Ohio courts have also recognized that, even though the legal effect of a guardian may have terminated, the guardian still retains some residual authority over the estate assets before they are turned over to an executor. In State exrel. Beedle v. Kiracofe (1964), 176 Ohio St. 149, the Supreme Court expressly stated that a guardian has the power after the ward's death to make a proper accounting and settlement of any acts taken in regard to the ward's assets.
 {¶ 15} The concept of residual authority following the ward's death has also been extended to the court which imposed the guardianship. In Inre Schueneman (1948), 78 N.E.2d 688, the guardian's fee application for herself and her attorney was not filed with the probate court until after the ward had died. Although the ward's wife did not contest the fact that the guardian had performed valuable services prior to the ward's death, the wife did argue that the probate court could not consider the fee application because any request for the payment of funds must now be presented to the administrator's of the remaining estate. In rejecting the wife's argument and concluding that it did retain jurisdiction in this situation, the Schueneman court first noted that the prior Ohio case law on this point supported the proposition that a probate court had the authority to "wind up" a guardianship even after the ward's death. Second, the court held that the provisions of the statutory scheme governing guardianships also supported this proposition:
 {¶ 16} "The Legislature, in providing that the Probate Court shall make such allowance to fiduciaries for their services and expenses in executing their trust as it deems proper, certainly did not intend that the Court, when a fiduciary has rendered services and incurred expenses in the execution of a trust for an incompetent ward, cannot approve such fiduciary's claim for services and expenses unless presented prior to the death of the ward. The services of the guardian of a ward are not fully executed until the guardian has filed his final account, with proper approval of the Court, and until the assets of the ward are paid over to the personal representative of the deceased ward, or other disposition made of the assets by order of Court. It is impractical and unnecessary, and perhaps improper, under Ohio law, to require a guardian and his attorney to present their claims to the personal representative of a deceased ward for unpaid services and expenses rendered either before or after the death of the ward in the execution of their duties in a guardianship of said ward." Id., at 691.
 {¶ 17} Even though the Schueneman decision was issued nearly sixty years ago and has never been expressly adopted by any appellate district, this court still holds that the logic of the decision is persuasive. First, our review of the prior Ohio precedent shows that theSchueneman logic was consistent with the applicable decisions which had been rendered previously on this general issue. See Scattergood v.Ingram (1912), 86 Ohio St. 76. As to this point, we would further indicate that relator has not referred us to any subsequent precedent which conflicts with that logic. Second, the Schueneman holding is still consistent with the provisions in the Revised Code governing guardianships. For example, R.C. 2101.24(A)(1)(d) states that a probate court has the jurisdiction to settle the accounts of guardianships.
 {¶ 18} Third, and most importantly, the Schueneman logic simply makes sense. In most instances, guardians are appointed for elderly persons who are no longer able to provide for themselves; accordingly, it cannot be said that the factual scenario in the instant case or Schueneman rarely occurs. Notwithstanding this fact, the Revised Code only provides for the "guardianship" court to settle the accounts of the guardianship. If the General Assembly had intended for jurisdiction to transfer to the "estate" court after the ward has died, it could have included such a provision in the applicable statutory scheme. The absence of such a provision supports the inference that the legislature has recognized that, since the "guardianship" court is already familiar with the facts of a case, it can dispose of any pending matter following the ward's death in a more timely and judicious manner.
 {¶ 19} In support of her basic argument on the jurisdictional issue, relator asserts that the Schueneman logic conflicts with this court's subsequent holding in In re Mogul (Apr. 30, 2002), 11th Dist. No. 2001-T-0083, 2002 Ohio App. LEXIS 2057. However, the Mogul case involved a situation in which a relative of the ward filed objections to an inventory report six months after the death of the ward and three years after the report had been submitted by the guardian. Thus, even though our Mogul decision did rely on the prior case law which stated that the legal effect of a guardianship terminates when the ward dies, the facts of the instant action are readily distinguishable from the facts inMogul. That is, Mogul did not involve a scenario in which an individual was attempting to receive payment for services performed for the benefit of the ward.
 {¶ 20} Pursuant to the foregoing analysis, this court holds that the jurisdiction of a "guardianship" court does not completely terminate immediately after the ward's death. Instead, that court has continuing jurisdiction to settle all pending matters in the action and render a judgment as to the final accounting of the estate. Therefore, the primary issue before us concerns whether the payment of fees to a master commissioner is a matter which a "guardianship" court can resolve in "winding up" the guardianship.
 {¶ 21} Initially, this court would indicate that, once a master commissioner has been properly appointed by the probate court, he has a statutory duty to take evidence and render a report on the pending issues. See R.C. 2101.06. To the extent that the resolution of pending issues assists in the proper functioning of the guardianship, the services performed by a master commissioner are analogous to those performed by the guardian. As a result, the logic followed in Schueneman
as to a guardian would also be applicable to a master commissioner; i.e., if a master commissioner performs services in relation to a guardianship case, the "guardianship" court has jurisdiction to consider the fee question regardless of when that question is raised in relation to the death of the ward.
 {¶ 22} Second, our review of the statutory provisions governing the duties of a master commissioner shows that his fees are viewed as part of the court costs of the underlying case. Specifically, R.C. 2101.07
provides, in pertinent part: "The court shall allow such commissioner such fees as are allowed to other officers for similar services, which fees shall be taxed with the costs."
 {¶ 23} As a general proposition, courts costs are statutory fees which a trial court must assess and include in the final judgment of the case. See Williamson v. Ameritech Corp. (1998), 81 Ohio St.3d 342, 343. As was noted above, even after a ward has died, the "guardianship" court still retains jurisdiction to render a final accounting as to the assets of the ward's estate. Since the assessment of other court costs would obviously be a matter that a probate court could properly resolve in making the final accounting, it follows that such a court would also have jurisdiction to determine the amount of fees to which a master commissioner would be entitled.
 {¶ 24} In her instant case, relator admitted in her petition that Attorney Spotz had performed certain services for the Hards guardianship as a master commissioner. Even though her petition contained a number of other allegations, this admission would be the controlling fact under the foregoing legal analysis for determining if respondent acted within its jurisdiction in the underlying matter. That is, because a probate court retains the jurisdiction to "wind up" the affairs of a guardianship even after the ward has passed away, respondent had the authority to rule upon any fee application which pertained to services performed for the Hards guardianship.
 {¶ 25} The foregoing basic logic would also apply to any request for fees made by Attorney Meraglio as the new guardian. In regard to him, this court would first note that, since relator's own allegations indicate that he has never made a fee request, her prohibition petition is premature as to him. Nevertheless, even if Attorney Meraglio had already made such a request, the death of the ward would not affect the jurisdiction of respondent to hear the issue because any fee owed to a guardian for services rendered would have to be paid from the guardianship estate before a final accounting is made. That is, even though the fee of the guardian is not considered a "court cost" in the same respect as the fee of a master commissioner, it is still an expense of the guardianship which must be determined in "winding up" the guardianship.[4]
 {¶ 26} As a separate argument in her petition, relator contended that, because Attorney Spotz's report resulted in a decision in the estate's favor on the fee request of Michael A. Shore Company, the fees for Attorney Spotz should not have been assessed against the estate. As to this point, this court would indicate that any error as to which party should pay the fee would not have affected respondent's general jurisdiction over that issue. Instead, such an error would only constitute a procedural mistake which can only be contested in a proper direct appeal from the October 2003 judgment.
 {¶ 27} In order to succeed on the merits of a prohibition claim, the relator must be able to prove that: (1) a judicial officer is about to exercise his judicial authority over a matter; (2) the proposed use of this power is not permissible under the applicable law; and (3) the denial of the writ will result in an injury for which there is no adequate legal remedy. State ex rel. Ragozine v. Shaker, 11th Dist. No. 2001-T-0122, 2001-Ohio-7062. Thus, a prohibition claim will be subject to dismissal under Civ.R. 12(B)(6) when the nature of the allegations are such that, even when the allegations are construed in a manner most favorable to the relator, it is beyond doubt that the relator will not be able to prove a set of facts under which all three elements of the claim can be met. State ex rel. Kister-Welty v. Hague, 11th Dist. No. 2004-A-0070, 2005-Ohio-1788.
 {¶ 28} In light of the foregoing discussion, this court holds that the instant petition is legally insufficient to state a viable claim for a writ of prohibition. Again, because our review of the relevant case law supports the conclusion that the death of the ward does not deprive a probate court of the authority to consider the merits of a fee request by a master commissioner who has heard issues in the underlying proceeding, relator's own allegations show that respondent had jurisdiction to go forward on Attorney Spotz's fee application. Stated differently, since relator admits that the work performed by Attorney Spotz pertained to the Hards guardianship, she will never be able to demonstrate that jurisdiction over the fee issue was transferred to the Geauga County Probate Court after the death of the ward.
 {¶ 29} Besides the second element of her claim, relator's own allegations readily indicate that she had an adequate legal remedy in this particular instance. At the time respondent rendered his "fee" judgment in October 2003, that judgment constituted a final appealable order under R.C. 2505.02(B). As to this point, we would emphasize that respondent's new judgment addressed the same subject matter which we had fully considered in the appeal from Judge Skok's original "fee" judgment. Despite the fact that relator had taken the appeal from Judge Skok's judgment, she chose not to appeal respondent's new judgment. Under such circumstances, relator cannot attempt to use a prohibition action as a substitute for a direct appeal, especially when there was no plain and unambiguous lack of jurisdiction to go forward on the "fee" question. SeeBrooks v. Gaul, 89 Ohio St.3d 202, 2000-Ohio-133.
 {¶ 30} Because the instant petition is legally insufficient as to the second and third elements of a prohibition claim, respondent's motion to dismiss is granted. It is the order of this court that relator's entire petition in prohibition is hereby dismissed.
Ford, P.J., Rice, J., O'Toole, J., concur.
[1] Even though Attorney Meraglio had been appointed as the new guardian of the Hards' Estate in Judge Skok's February 2002 judgment, relator continued to act as the representative of the guardian estate in the subsequent proceedings.
[2] In a separate portion of his October 2003 judgment, respondent indicated that, even though Attorney Meraglio had been appointed the new guardian of the estate in February 2001, relator still had not turned over any of the estate assets to him. As to this point, this court would note that part of the delay in this matter was clearly attributable to Attorney Meraglio. For example, the limited materials before us shows that, during the period from March 2002 until October 2003, Attorney Meraglio never moved respondent or Judge Skok to hold relator in contempt for failing to transfer the estate assets. Notwithstanding the fact that our stay order in 11th Dist. No. 2002-L-054 to the payment of the "master commissioner" fees to Attorney Spotz, Attorney Meraglio did not take any necessary steps to seize the assets so that the estate could be quickly settled once the "fee" issue had been determined.
[3] In his motion to dismiss, respondent maintains that there was an eight-month delay between his final ruling on relator's post-judgment motions and the filing of this action. Respondent further states that this delay was due primarily to the fact that, in February 2004, relator filed a notice of appeal in regard to the October 2003 judgment. According to respondent, it was not until this new appeal was dismissed by this court as untimely that relator decided to bring this original action.
[4] As an aside, this court would indicate that relator's fears as to the amount of fees Attorney Meraglio might be slightly unfounded. As was noted above, following his appointment as the new guardian of the estate, Attorney Meraglio did not take any steps to compel relator to relinquish control over the estate assets. Thus, even if Attorney Meraglio did participate in a number of hearings before respondent, the extent of his fees as guardian should be minimal in contrast to the services performed by Attorney Spotz as master commissioner.