**In re HARDS; Adams et al., Appellants.**

[Cite as *In re Hards,* 175 Ohio App.3d 168, 2008-Ohio-630.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 2006–L–158 and 2007–L–012.

Decided Feb. 15, 2008.

James T. Flaherty, pro se; and Mary E. Papcke, for appellants.

Ziegler, Metzger & Miller, L.L.P., Nicholas C. DeSantis, and Stephen M. Darlington, for appellee Richard T. Spotz Jr.

Russell J. Meraglio, pro se; and Reminger & Reminger Co., L.P.A., and Franklin C. Malemud, for appellee Russell J. Meraglio.

Charles E. Coulson, Lake County Prosecuting Attorney, and Michael L. DeLeone, Assistant Prosecuting Attorney, for appellee Lake County Prosecuting Attorney.

---

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellants, attorney James T. Flaherty and Jacqueline Adams, appeal the judgment of the Lake County Court of Common Pleas, finding them guilty of criminal contempt. For the following reasons, we affirm the decision of the court below.

{¶ 2} On April 10, 1995, Adams was appointed guardian of the person and estate of her mother, Bertina Hards. In the course of her guardianship of the estate, Adams filed six partial accountings of the estate's assets. In the final partial accounting, filed September 13, 2001, Adams reported assets totaling $220,350.40 in the estate.

{¶ 3} In the first years of the guardianship, the Hards estate became involved in litigation against Dean Witter Reynolds, Inc., a brokerage firm that managed several accounts belonging to the estate.[1] See *Adams v. Dean Witter Reynolds, Inc.* (June 17, 1999), 8th Dist. No. 74379, 1999 WL 401394. As a result of this involvement, the estate was beset with numerous motions for attorney fees and other matters. See *In re Hards*, 11th Dist. No. 2002–L–032, 2003-Ohio-1207, 2003 WL 1193779, at ¶ 3–11.

{¶ 4} On March 15, 2001, the probate court sua sponte appointed Richard T. Spotz Jr. as special master commissioner to resolve these matters. Spotz filed a report that the probate court adopted on February 4, 2002. In this judgment entry, the probate court resolved the pending requests for attorney fees and other motions and removed Adams as guardian of the Hards estate but retained her as guardian of Hards's person. The court appointed Russell J. Meraglio Jr. successor guardian for the Hards estate. The court ordered Adams to "file a final and distributive account" and "turn over all Estate Documentation to * * *

---

1. All references to "the estate" or "the Hards estate" are references to the guardianship estate filed in Lake County Probate Court and the subject of the present appeal, unless specifically noted otherwise.

Meraglio * * * within 30 days of this Judgment Entry." The court ordered Meraglio to "file the appropriate bond with this Court within 10 days of the final and Distributive Account being filed with this Court."

{¶ 5} In *In re Hards*, 2003-Ohio-1207, 2003 WL 1193779, the Michael A. Shore Co., L.P.A., appealed the February 4, 2002 judgment entry denying its request for attorney fees. In March 2003, this court affirmed the decision of the probate court. Id. at ¶ 19. Adams did not appeal the probate court's February 4, 2002 judgment entry.

{¶ 6} On February 24, 2002, Bertina Hards died at her home in Geauga County.

{¶ 7} On March 15, 2002, the probate court awarded special master commissioner Spotz $11,855 for services and expenses to be paid by the guardian of the Hards estate. Adams appealed the award to this court. In August 2003, this court reversed the award and remanded the case for the limited purpose of determining whether the amount awarded was reasonable. *In re Hards*, 11th Dist. No. 2002–L–054, 2003-Ohio-4224, 2003 WL 21892925, at ¶ 23.

{¶ 8} On October 3, 2003, a hearing was held on the reasonableness of Spotz's fees. At this point, Adams was being represented by Flaherty and attorney Geoffrey W. Weaver. At this hearing, Weaver raised no objection to Spotz's fees, while Flaherty maintained that Adams was without jurisdiction to question Spotz regarding his fees. Flaherty acknowledged that "in fact and in law, Mr. Meraglio is the guardian of the Hards estate" and that Adams's rights and duties as guardian of the person terminated upon the death of Bertina Hards in February 2002.

{¶ 9} In its October 7, 2003 judgment entry, the probate court awarded Spotz fees in the amount of $13,709.76, taxed as costs to the estate pursuant to R.C. 2101.07. The court further noted that none of the estate assets had been delivered to Meraglio. Accordingly, the court scheduled a hearing to determine the status of the $220,350.40 belonging to the estate. The court ordered Adams to "return all guardianship funds to the guardianship" and ordered Flaherty to "file a written explanation with the Court * * * concerning what happened to the guardianship funds and who has possession of said funds."

{¶ 10} On October 24, 2003, the probate court issued a judgment entry finding that neither Adams nor Flaherty had complied with its October 7 order. The court noted that Adams had filed a summary of inventory and accounts in which, for the first time, she identified Bertina Hards's assets as "joint with a right of survivorship" and "payable on death" assets. This document failed to account for guardianship assets or establish "what assets in the guardianship, if any, were joint assets or had a beneficiary prior to the establishment of the guardianship."

The court then ordered Adams and Flaherty to comply with its October 7, 2003 judgment entry.

{¶ 11} On November 26, 2003, in response to a motion for instructions filed by Adams, the probate court issued another judgment entry ordering Adams and Flaherty to comply with the October 7 and October 24, 2003 judgment entries. The court further advised Adams that it could not accept the final distributive account until court costs had been paid.

{¶ 12} On December 5, 2003, the probate court issued a judgment entry in response to the filing of numerous motions and documents by Flaherty. The court repeated its order that Adams and Flaherty file an explanation of what happened to the $200,000 in guardianship assets.

{¶ 13} On December 29, 2003, and January 14, 2004, an inconclusive hearing on the status of the guardianship assets was held.

{¶ 14} On January 9, 2004, Adams filed a collection of documents attesting the existence of an Estate of Bertina Hards, Deceased, Geauga County Court of Common Pleas, Probate Division No. 02–PE–194, with Adams as administrator. Included among these documents was a report of newly discovered assets consisting of $78,000 worth of funds in various credit union accounts.

{¶ 15} In its January 16, 2004 judgment entry, the probate court again ordered Adams and Flaherty to "turn over all original documents relating to the owner-ship of the assets of the guardianship of Bertina Hards to * * * Meraglio * * * for attorney Meraglio to review and make copies of any documents he deems necessary." The court noted that although Adams had submitted a purported "final and distributive account," the account would not be approved "because it is not an accurate accounting, there is no proof that the bond * * * is current and court costs have not been paid." The court ordered Meraglio and Spotz to make requests for additional fees within 20 days of that judgment entry. Thereafter, Spotz filed two applications for special-master-commissioner fees in the amount of $18,110.13, and Meraglio filed an application for guardian fees in the amount of $5,959.

{¶ 16} In February 2004, Flaherty filed a notice of appeal from the probate court's October 7, 2003 judgment entry. In September 2004, this court dismissed the appeal as untimely. *In re Hards*, 11th Dist. No. 2004–L–028, 2004-Ohio-4866, 2004 WL 2047486, at ¶ 9.

{¶ 17} In November 2004, Adams filed a writ of prohibition in this court, seeking to prevent the probate court from proceeding with this case on the grounds that the probate court lost jurisdiction over the estate upon the death of the ward. *State ex rel. Estate of Hards v. Klammer*, 11th Dist. No. 2004–L–189, 2005-Ohio-2655, 2005 WL 1272374.

{¶ 18} This court dismissed Adams's petition, holding "that the jurisdiction of a 'guardianship' court does not completely terminate immediately after the ward's death. Instead, that court has continuing jurisdiction to settle all pending matters in the action and render a judgment as to the final accounting of the estate." Id. at ¶ 20. In particular to the Hards estate, this court held that the probate court "had the authority to rule upon any fee application which pertained to services performed [by Spotz as special master commissioner or Meraglio as successor guardian] for the Hards guardianship." Id. at ¶ 24. This court's decision was subsequently affirmed by the Supreme Court of Ohio. *State ex rel. Estate of Hards v. Klammer,* 110 Ohio St.3d 104, 2006-Ohio-3670, 850 N.E.2d 1197, at ¶ 16.

{¶ 19} On February 23, 2006, the probate court held a hearing on the following matters: the payment of special-master-commissioner and guardian fees; the status of guardianship accounts and assets; the payment of court costs; the filing of a final account; and motions to show cause for Adams and Flaherty's failure to comply with the court's previous orders of February 4, 2002, October 7, 2003, October 24, 2003, November 26, 2003, and January 16, 2004.

{¶ 20} In its June 23, 2006 judgment entry, the probate court found that Adams and Flaherty failed to show cause for their failure to comply with the court's previous orders and repeated the orders for them to pay court costs, including Spotz's and Meraglio's fees, file a final distributive account, deliver guardianship assets to Meraglio, and provide Meraglio with guardianship documentation. The court advised Adams and Flaherty they would be subject to contempt if they failed to timely comply with the court's orders. Spotz's and Meraglio's fee requests were continued due to Adams's and Flaherty's allegations that they were not served with motions for the fees.

{¶ 21} Adams appealed the probate court's June 23, 2006 judgment entry to this court as 11th Dist. No. 2006–L–158. This appeal was dismissed for failure to prosecute but subsequently reinstated upon Adams's motion.

{¶ 22} On September 19, 2006, Spotz and Meraglio filed separate motions to show cause against Adams and Flaherty, setting forth civil and quasi-criminal contempt charges.

{¶ 23} On October 13, 2006, the probate court entered an order to show cause against Adams and an order to show cause against Flaherty, ordering them to appear and show cause why they should not be held in civil and/or criminal contempt for violating numerous prior court orders. The court also ordered the cases referred to the Lake County Prosecuting Attorney for prosecution of criminal contempt charges.

{¶ 24} On December 1, 2006, the Lake County prosecuting attorney filed a bill of particulars stating seven counts of indirect criminal contempt, a petty criminal offense in violation of R.C. 2705.02(A) and (B), against Flaherty for the following conduct: (1) failing to turn over all estate documentation to Meraglio as ordered by the February 4, 2002 judgment entry, (2) failing to file a written explanation with the court within ten days of the October 7, 2003 judgment entry concerning what happened to the guardianship funds and who had possession of these funds as ordered by the October 7, 2003 judgment entry, (3) failing to comply with the November 26, 2003 judgment entry, ordering Flaherty to comply with the October 7 and October 24, 2003 judgment entries, (4) failing to comply with the December 5, 2003 judgment entry ordering Flaherty to file an explanation of what happened to $200,000 in guardianship assets, (5) failing to turn over all original documents relating to the ownership of the assets of the Hards estate to successor guardian Meraglio as ordered by the January 16, 2004 judgment entry, (6) failing to pay court costs, including special-master-commissioner fees, file a final and distributive account, distribute guardianship assets to Meraglio, and provide Meraglio with all guardianship asset documentation as ordered by the June 23, 2006 judgment entry, and (7) assisting his client, Adams, in disobedience of orders of the probate court.

{¶ 25} On December 1, 2006, the Lake County prosecuting attorney filed a bill of particulars stating nine counts of indirect criminal contempt, a petty criminal offense in violation of R.C. 2705.02(A) and (B), against Adams for the following conduct: (1) failing to file a final and distributive account as ordered by the February 4, 2002 judgment entry, (2) failing to turn over all estate documentation to Meraglio as ordered by the February 4, 2002 judgment entry, (3) failing to file an explanation of what happened to $200,000 in guardianship assets as ordered by the December 5, 2003 judgment entry, (4) failing to return all guardianship funds to the guardianship as ordered by the October 7, 2003 judgment entry, (5) failing to comply with the October 7, 2003 judgment entry as ordered by the October 24, 2003 judgment entry, (6) failing to comply with the October 7 and October 24, 2003 judgment entries as ordered by the November 26, 2003 judgment entry, (7) failing to file a final account and pay court costs as ordered by the November 26, 2003 judgment entry, (8) failing to turn over all original documents relating to the ownership of the assets of the Hards guardianship as required by the January 16, 2004 judgment entry, (9) failing to pay court costs, including special-master-commissioner fees, file a final and distributive account, distribute guardianship assets to Meraglio, and provide Meraglio with guardianship asset documentation as ordered by the June 23, 2006 judgment entry.[2]

---

2. A tenth count contained in the bill of particulars against Adams was disregarded by the probate court as being duplicative of the ninth count.

{¶ 26} On December 4, 2006, Adams paid court costs, including special-master-commissioner fees, in the amount of $17,603.02.

{¶ 27} The trial on the charges of indirect criminal contempt was held between December 5 and 15, 2006.

{¶ 28} On January 5, 2007, the probate court found Adams and Flaherty guilty on all counts of criminal contempt, excepting the contempt for failure to pay court costs, as clarified in the court's March 6, 2007 judgment entry. In a separate judgment entry, the court fined Adams $900 and sentenced her to seven days in the Lake County Adult Detention Facility or to 100 hours of community service in lieu of jail time, and fined Flaherty $800 and sentenced him to seven days in the Lake County Adult Detention Facility or to 100 hours of community service in lieu of jail time.

{¶ 29} Adams and Flaherty appealed the probate court's January 5, 2007 judgment entries to this court as 11th Dist. No. 2007–L–012. Appeal Nos. 2006–L–156 and 2007–L–012 have been consolidated for all purposes.[3]

{¶ 30} On appeal, Adams and Flaherty raise the following assignments of error:

{¶ 31} "[1] The trial court erred in its order to Appellant Adams to turn over Guardian Estate assets in 2006 to Lake County, when the court knew that Appellant was mandated by law to deposit the assets in the Decedent's Estate in Geauga County upon death of the ward in 2002, and did so.

{¶ 32} "[2] The trial court erred when it ordered the Appellants to pay Attorney's Fees as Commissioner directly to the Attorney/Commissioner.

{¶ 33} "[3] The Trial Court erred in finding the Appellants guilty of Indirect Criminal Contempt where its verdicts of guilty were void for lack of Jurisdiction over the subject matter and/or the person(s) against whom it was entered.

{¶ 34} "[4] The trial court erred in holding an Attorney-of-record personally and criminally liable for the non-payment of court costs by his client.

{¶ 35} "[5] The trial court erred in its holding that an appointment of a Probate Fiduciary by a prior Judge, where there has been no compliance with the threshold mandates of O.R.C. 2109.04, is a legal appointment of a guardian; it is not a legal appointment.

---

**3.** The present appeal involves only the judgment finding Adams and Flaherty guilty of criminal contempt. A separate appeal dealing with issues of civil contempt is currently pending. We discuss the validity of other judgment entries only to the extent necessary to respond to the issues raised on appeal by the appellants, i.e., their claim that they cannot be found guilty of criminal contempt for violating allegedly invalid court orders.

{¶ 36} "[6] The trial Court erred when it merged the legal definitions and elements of Civil and Indirect Criminal Contempt when it found that the Appellants acted knowingly and with the intent and purpose to directly affront and/or insult the dignity or process of the Court, where there was no evidence at all in support of Criminal Contempt."

{¶ 37} A person may be found guilty of criminal contempt for any of the following actions—"[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court" and "[m]isbehavior of an officer of the court in the performance of official duties." R.C. 2705.02(A) and (B).[4] Indirect contempt has been defined as contempt "committed outside the presence of the court but which * * * tends to obstruct the due and orderly administration of justice." *In re Lands* (1946), 146 Ohio St. 589, 595, 33 O.O. 80, 67 N.E.2d 433. The acts proscribed by R.C. 2705.02 are considered to be indirect acts of contempt. *Lyons v. Bowers*, 11th Dist. No. 2006–L–119, 2007-Ohio-1548, 2007 WL 959916, at ¶ 21; *Tippie v. Patnik*, 11th Dist. No. 2005–G–2665, 2006-Ohio-6532, 2006 WL 3550440, at ¶ 35.

{¶ 38} "A prerequisite to a charge of contempt for disobeying a court order is the existence of a valid order." *Cortland United Methodist Church v. Knowles*, 11th Dist. No. 2006–T–0110, 2007-Ohio-3383, 2007 WL 1883273, at ¶ 33.

{¶ 39} In criminal contempt proceedings, " 'the defendant is presumed to be innocent' " and " 'must be proved to be guilty beyond a reasonable doubt.' " *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 559, 740 N.E.2d 265, quoting *Gompers v. Bucks Stove & Range Co.* (1911), 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797. "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362, citing *United States v. United Mine Workers of Am.* (1947), 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884.

{¶ 40} In their first assignment of error, Adams and Flaherty argue that upon the death of the ward, Bertina Hards, in February 2002, the probate court was divested of authority and jurisdiction "to make any actions or judgments concerning the assets of [the estate] except [to] * * *: (1) settle all existing claims; (2) preserve the Estate for the benefit of the Decedent's Estate; (3) transfer all remaining Ward assets to the Decedent's Estate; and (4) File a Final Distributive Account." Cf. *Hards*, 2005-Ohio-2655, 2005 WL 1272374, at ¶ 24 ("a

---

4. The guardian of an estate, like an attorney, is considered an officer of the court. *In re Clendenning* (1945), 145 Ohio St. 82, 93, 30 O.O. 301, 60 N.E.2d 676.

probate court retains jurisdiction to 'wind up' the affairs of a guardianship even after the ward has passed away"). Thus, they argue that the order in the probate court's June 23, 2006 judgment entry that Adams and Flaherty "shall distribute the guardianship assets to attorney Meraglio" is invalid. We disagree.

{¶ 41} The probate court's order to return assets to the guardianship was made in the course of "winding up" the affairs of the guardianship. Prior to Bertina Hards's death, Adams had reported estate assets in excess of $200,000. In February 2002, also prior to Hards's death, Adams was replaced as guardian of the estate by Meraglio. At this time, control of the estate's assets should have been delivered to Meraglio, but they were not delivered. In 2003, the probate court became concerned that these guardianship funds had been improperly disbursed as joint and survivorship or payable upon death, although they had not been identified as such prior to Hards's passing. Moreover, the funds remaining in the estate were inadequate to cover the costs of the estate. Thus, it was impossible to settle the estate's accounts without recovering or otherwise accounting for the funds belonging to the estate. Due to Adams's failure to comply with the court's orders, it was impossible to determine the status or even the location of these funds as well as to make a final accounting.

{¶ 42} For these reasons, the order for the return of the improperly transferred assets to the guardianship estate was necessary to the "winding up" of the estate's affairs and within the probate court's continuing jurisdiction. The first assignment of error is without merit.

{¶ 43} In their second assignment of error, Adams and Flaherty argue that the probate court erred by ordering Adams "to pay the Attorney/Commissioner's fee bill directly to the Attorney/Commissioner." They assert that, "once taxed as costs, the Attorney/Commissioner's fee bill can only be collected by the Clerk of Courts."

{¶ 44} As noted above, on the day before trial began on the criminal contempt charges, Adams paid court costs to the probate court's satisfaction by check made payable to the Lake County Probate Court. As the court's March 6, 2007 judgment entry makes clear, "neither attorney Flaherty nor Mrs. Adams are guilty of contempt of court for failure to pay court costs." Both the trial court and the appellants acknowledge the issue of court costs is moot.

{¶ 45} The second assignment of error is without merit.

{¶ 46} Under their third assignment of error, Adams and Flaherty assert that "all the after-death judgments directed to the Guardian and counsel were issued to coerce and enforce the illegal after-death Fee Claims of the two Third Party Beneficiaries [i.e., the special master commissioner and successor guardian]." Since the probate court's jurisdiction over these matters terminated upon

the death of the ward, appellants argue, "those judgments were Void Per Se * * * and cannot serve as a basis for * * * Criminal Contempt." We disagree.

{¶ 47} Adams previously challenged the probate court's jurisdiction to issue judgments regarding the payment of fees in the writ of prohibition filed in November 2004. As noted above, this court rejected Adams's arguments, dismissed her petition, and expressly held that the probate court has continuing jurisdiction to resolve all issues regarding master-commissioner and guardian fees. *Estate of Hards*, 2005-Ohio-2655, 2005 WL 1272374, at ¶ 10–27, 28 (Adams "will never be able to demonstrate that jurisdiction over the fee issue was transferred to the Geauga County Probate Court after the death of the ward"). The Supreme Court of Ohio affirmed this judgment. *State ex rel. Estate of Hards v. Klammer*, 110 Ohio St.3d 104, 2006-Ohio-3670, 850 N.E.2d 1197, at ¶ 16. Accordingly, the issue of the probate court's jurisdiction is res judicata.

{¶ 48} Moreover, Adams and Flaherty are incorrect that the probate court's judgments issued after the death of the ward would be void per se. If the judgments were, in fact, void per se, Adams and Flaherty could not be found guilty of criminal contempt. *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176 at 184, 593 N.E.2d 1379 ("If the order is void, the violation of the order is not contempt").

{¶ 49} The Supreme Court of Ohio, however, has determined, in a prior appeal of this matter, that the Lake County Probate Court has general subject-matter jurisdiction over the Hards estate. Considering the denial of appellants' writ of prohibition, the Supreme Court affirmed the probate court's authority to issue orders regarding fees and estate costs.

{¶ 50} In several recent cases, the Supreme Court has elaborated upon the circumstances when a court's judgment is void for want of jurisdiction to adjudicate a case (subject-matter jurisdiction) and when a court's judgment is voidable for want of jurisdiction over a particular case. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 10–15; *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 10–12. Jurisdiction over a particular case " 'encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' " *Pratts*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 12, quoting *State v. Swiger*, (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, ' * * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' " Id., quoting *Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494, 499.

{¶ 51} In the present case, it is undisputed that the probate court's jurisdiction over the Hards estate was "perfect" when it was opened by Adams. Thus, all subsequent judgments regarding the estate involved the exercise of its subject-matter jurisdiction and could only be deemed voidable.

{¶ 52} The third assignment of error is without merit.

{¶ 53} In the fourth assignment of error, Adams and Flaherty argue that attorney Flaherty cannot be ordered "to personally pay the Estate Court Costs." For the reasons stated under the second assignment of error, any issues involving court costs are now moot.

{¶ 54} Regarding other orders directed to Flaherty, such as the orders to turn over estate documentation, distribute guardian assets, and file a final and distributive account, Flaherty's culpability resides in the fact that he advised his client, Adams, to disobey court orders to take these actions.

{¶ 55} Although Flaherty testified at the criminal contempt trial that he did not advise Adams to disobey the probate court's orders, the court did not find this testimony credible. The court cited Flaherty's testimony from previous hearings where he admitted to advising Adams to transfer funds from the guardianship accounts, despite the nonpayment of court costs. Adams herself testified that Flaherty advised her not to comply with the court's orders. Moreover, the court noted that Flaherty continued to raise legal arguments for the purpose of avoiding the court's orders after those arguments had been rejected by competent judicial authorities and continued to draft documents and pleadings, which Adams filed pro se, for the same purpose.

{¶ 56} An attorney who advises or counsels a client to act in defiance of a court's valid order is liable to contempt. *In re Green* (1961), 172 Ohio St. 269, 275, 15 O.O.2d 449, 175 N.E.2d 59, reversed on other grounds (1962), 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 ("appellant possessed the right to advise his clients that in his opinion the Court of Common Pleas was without jurisdiction of the cause and acted beyond its powers * * *, but when he went further and told them to disobey the order, * * * he laid himself open to the contempt charge").

{¶ 57} The fourth assignment of error is without merit.

{¶ 58} In the fifth assignment of error, Adams and Flaherty argue that "Mr. Meraglio never was, and is not, the legally appointed Guardian * * * of the Hards Estate" and, therefore, "all the Court Orders" directing the delivery of assets and documentation to Meraglio as well as "all subsequent proceedings * * * to enforce fee claims by Meraglio and Spotz" are void and illegal. We disagree.

{¶ 59} Meraglio was appointed successor guardian to Adams by the probate court's February 4, 2002 judgment entry. As explained above, the probate court possessed the necessary jurisdiction to make this appointment. *In re Clendenning* (1945), 145 Ohio St. 82, 30 O.O. 301, 60 N.E.2d 676, paragraph one of the syllabus ("Plenary and exclusive, original jurisdiction is given by law to the Probate Courts of this state in the matter of the appointment and removal of guardians"). If Adams wished to contest the court's exercise of that jurisdiction in its appointment of Meraglio, Adams should have challenged his appointment on appeal. Although the February 4, 2002 judgment entry was appealed, the appointment of Meraglio was not challenged. Accordingly, the appointment is res judicata and may not be challenged in the present appeal. The subsequent orders of the probate court, deriving from Meraglio's appointment as successor guardian, are similarly immune from challenge in the present appeal.

{¶ 60} The fifth assignment of error is without merit.

{¶ 61} In the sixth and final assignment of error, Adams and Flaherty assert that the conduct for which they are held in contempt does not rise to the level of criminal contempt, but, at most, civil contempt. Appellants maintain that the difference between criminal and civil contempt depends upon the "injured party." "[C]ivil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *Russo*, 90 Ohio St.3d at 555, 740 N.E.2d 265. (Citation omitted). In the present case, the judgments underlying the contempt charges were brought for the benefit of "third party beneficiaries," i.e., special master commissioner Spotz and successor guardian Meraglio, rather than for "an insult to the dignity or process of the Court or to vindicate the Court." Since the contempt proceedings were initiated so Spotz and Meraglio "can collect some patently illegal fees," appellants' conduct does not rise to the level of criminal contempt. We disagree.

{¶ 62} "Contempt is defined in general terms as disobedience of a court order." Id. at 554, 740 N.E.2d 265. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." Id. at paragraph two of the syllabus.

{¶ 63} Contemptuous conduct is not exclusively a civil or criminal matter; thus, contempt proceedings are often considered sui generis. *Denovchek*, 36 Ohio St.3d at 16, 520 N.E.2d 1362; *Gompers*, 221 U.S. at 441, 31 S.Ct.

492, 55 L.Ed. 797. When necessary to distinguish between civil and criminal contempt, the courts have most often considered the character and purpose of the contempt sanctions. "If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. * * * Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is imprisoned until he obeys the court order. * * * Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. * * * Its sanctions are punitive in nature, designed to vindicate the authority of the court." *Denovchek*, 36 Ohio St.3d at 16, 520 N.E.2d 1362. Accord *Russo*, 90 Ohio St.3d at 555, 740 N.E.2d 265.

{¶ 64} In the present case, Adams and Flaherty have engaged in a pattern of impeding and obstructing the probate court's efforts to administer and wind up its administration of the Hards estate for over five years. On February 4, 2002, while Bertina Hards still lived, Adams was ordered to file a final and distributive account, distribute the estate, and turn over all estate documentation to the successor guardian. Adams, with the advice and counsel of Flaherty, has yet to perform these actions despite numerous subsequent orders of the court to do so. Cf. R.C. 2111.50(A)(1) ("all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships"). These orders were not for the benefit of Spotz or Meraglio but to vindicate the probate court's responsibilities as the "superior guardian" of the ward. Appellants' disobedience of the court's orders constitutes an affront to the dignity and process of the court. Moreover, it constitutes a direct violation of the criminal contempt statute. See R.C. 2705.02(A) and (B), defining criminal contempt as the "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court," and "[m]isbehavior of an officer of the court in the performance of official duties."

{¶ 65} The sixth assignment of error is without merit.

{¶ 66} For the foregoing reasons, the January 5, 2007 judgment of the Lake County Court of Common Pleas, Probate Division, finding appellants Adams and Flaherty guilty of criminal contempt and imposing sentence thereupon, is affirmed.

Judgment affirmed.

RICE, J., concurs.

GRENDELL, P.J., dissents.