OPINION
{¶ 1} Appellant, Kenneth J. Adams, appeals from the judgment of the Painesville Municipal Court, which found him liable to appellee, Neil R. Wilson, for attorney fees following a lengthy consultation in which Mr. Adams knew prior to the meeting that he would be billed at Mr. Wilson's hourly rate for his professional time and legal advice. For the following reasons, we affirm. *Page 2 
 {¶ 2} Substantive and Procedural History
 {¶ 3} This case represents another chapter in the sad saga that is the guardianship of Bertina Hards. To understand the dispute now before this court some historical context is necessary. The history of the Hards' estate begins in 1993 when Mr. Adams' wife, Jacqueline, filed an application with the Probate Court of Cuyahoga County to be appointed the guardian of the person and estate of her mother, Bertina Hards. That application was withdrawn in the face of the opinions of independent medical experts declaring Mrs. Hards to be fully competent to handle her own affairs.
 {¶ 4} Two years later Mrs. Adams again sought to become her mother's guardian, this time filing her application in Lake County Probate Court, and in fact, was so appointed. Litigation concerning management of her mother's financial affairs by a brokerage firm soon ensued. Numerous motions for attorney's fees and other issues were filed, and in March of 2001, the Lake County Probate Court removed Mrs. Adams as the guardian of the estate, but retained her as the guardian of her mother's person, only. When Mrs. Adams was removed, she was ordered to turn over all estate documentation to the successor guardian and to file a final and distributive account. The court also appointed a special master to resolve the controversy regarding attorney fees requested of the estate, and ordered payment be made to the special master for his services.
 {¶ 5} Mrs. Hards died a resident of Geauga County in February of 2002, and Mrs. Adams filed an application for authority to administer her estate in that county.
 {¶ 6} In October of 2003, Mrs. Adams was ordered to return all guardianship funds to the guardianship by the Lake County Probate Court, and having failed to comply was then ordered in October of 2006 to appear and show cause why she should *Page 3 
not be held in contempt. In that same year, the Lake County Prosecutor filed a bill of particulars setting forth nine counts of indirect criminal contempt against Mrs. Adams.
 {¶ 7} All throughout this period and continuing to this day multiple appeals to this court and the Supreme Court of Ohio were perfected and pursed, and Attorney James T. Flaherty represented and continues to represent Mrs. Adams individually and in her fiduciary capacity. In April of 2005, Mr. Flaherty approached Mr. Wilson about a potential co-counsel relationship in the attorney fee litigation involving the guardianship estate, but nothing came of this discussion. Then on April 24, 2006, Mr. Adams telephoned Mr. Wilson seeking legal advice and counsel concerning the various issues that were obviously swirling about the Hards' estate. After a lengthy telephone consultation, Mr. Wilson agreed to see Mr. Adams in his office.
 {¶ 8} In advance of this consultation, Mr. Wilson informed Mr. Adams that this initial consultation would not be free, and that he billed at the rate of $195 per hour. Mr. Adams then went to Mr. Wilson's office for a consultation, which lasted over three hours. After the meeting, Mr. Wilson billed Mr. Adams $624 for his professional time and advice. Mr. Adams failed to pay the bill, and a complaint was filed against him the Painesville Municipal Court.
 {¶ 9} The case proceeded to a hearing on Mr. Adams' motion to dismiss, in which he alleged that the municipal court had no jurisdiction over the matter as Mr. Wilson's claim related to fees in a probate estate. The magistrate allowed Mr. Adams to testify beyond the allegations and denials of the pleading in regard to the legal issues discussed, but ultimately denied the motion, finding this argument to be without merit.
 {¶ 10} A one-day trial was held in February of 2007. The magistrate found that Mr. Adams sought the advice of Mr. Wilson on February 24, 2006. The unrefuted *Page 4 
evidence revealed that prior to this meeting Mr. Wilson advised him that the consultation would be billed at his hourly rate of $195. The magistrate concluded that Mr. Adams solicited advice from Mr. Wilson and that Mr. Adams consulted with Mr. Wilson, with the understanding that he was being billed for the consultation. Thus, a legitimate contractual relationship was formed that entitled Mr. Wilson to professional fees. Further, on the issue of jurisdiction, the magistrate concluded that the consultation was solely with Mr. Adams, and that no privity of contract existed between Mr. Wilson and any estate representative. The magistrate also found that the fee sought was neither excessive nor illegal. Neither party filed objections or a transcript of the hearing with the trial court. The trial court, after reviewing the magistrate's decision, and finding no error or defect, affirmed and adopted the decision on March 7, 2007.
 {¶ 11} Mr. Adams timely filed this appeal, and a motion to stay with the trial court pending appeal. The stay was granted, provided that Mr. Adams post a supersedeas bond in the amount of $900.
 {¶ 12} Mr. Adams now raises three assignments of error for our review:
 {¶ 13} "[1.] While Common Pleas and Municipal Courts have Jurisdiction to Enforce a Probate Fee Judgment, it is an Error of Law for a Municipal or Common Pleas Court to Award an Attorney Fees Claim against a Probate Estate, as that is the exclusive Jurisdiction of the Probate Court.
 {¶ 14} "[2.] It is an Error of Law for a Court to Charge an Attorney (as Legal Agent), or Agent, or even a Messenger, for the Liability or Debt of the Client/Principal.
 {¶ 15} "[3.] It is an Error of Law for a Judge to grant a Claim for Attorney Fees where the Claimant could not and would not state the factual basis for his Claim, and, where the Trier of Fact prohibited the Defendant from an Examination of the Swanson *Page 5 
et al factors, and, where the trier of fact reversed the burden of going forward and the burden of proof, and put it on the Defendant."
 {¶ 16} Failure to Object to Magistrate's Findings of Fact andConclusions of Law
 {¶ 17} We must note at the outset that Mr. Adams failed to object to the magistrate's findings of fact and conclusions of law, and further, failed to provide the trial court with a transcript from the magistrate's hearing. Thus, Mr. Adams cannot now raise these issues for the first time on appeal, and we are limited to a review of the jurisdictional issues he raises in his first assignment of error.
 {¶ 18} "Civ. R. 53(E)(3) provides that a party may not assign, as error on appeal, the trial court's adoption of any finding of fact or conclusion of law unless that party objects to that finding or conclusion. The failure to do so * * * results in the party being precluded from raising the issue for the first time on appeal."McCullough Builders, Inc. v. Waterfield Financial Corp., 11th Dist. No. 2001-L-142, 2003-Ohio-1583, ¶ 10, citing Ravenna Police Dept. v.Sicuro, 11th Dist. No. 2001-P-0037, 2002-Ohio-2119. "If a party does not object, a trial court may adopt a magistrate's decision unless there is an error of law or other defect on the face of the magistrate's decision. A trial court should, prior to adopting the magistrate's decision, review the decision for any obvious errors." Id., citingCahill v. Phelps, 11th Dist. No. 2000-L-201, 2001-Ohio-8765.
 {¶ 19} Moreover, in addition to filing any objections, Mr. Adams was also required to provide the trial court with a transcript of the magistrate's hearing. "[I]t is incumbent that the party had complied with Civ. R. 53(E)(c) when the party raised the [objection] at the trial level. That rule provides that, in objecting to a magistrate's finding of fact, a party must support the objection with `a transcript of all the evidence submitted to the *Page 6 
magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available.'" Bodor v. Fontanella, 11th Dist. No. 2005-T-0091, 2006-Ohio-3883, ¶ 18.
 {¶ 20} "In applying Civ. R. 53(E)(c), this court has consistently held that the rule places upon the burden of providing a transcript or affidavit expressly upon the objecting party, and that the failure to meet this burden before the trial court precludes the party from raising the factual issue on appeal." Id. at ¶ 19, see, e.g., Brown v.Gabram, 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶ 17, quotingCalhoun-Brannon v. Brannon, 11th Dist. No. 2003-T-0019, 2003-Ohio-7216, ¶ 9. "We have further held that when factual issues cannot be considered as a result of noncompliance with the rule, the scope of our review is limited to determining whether any error of law or other defect is readily apparent on the face of the magistrate's decision." Id., citingBrown at ¶ 18, quoting Lovas v. Mullett (July 29, 2001), 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, 5. See, also, Kaufman v.Byers, 159 Ohio App.3d 238, 2004-Ohio-6346, ¶ 23.
 {¶ 21} Thus, Mr. Adams is barred from raising his second and third assignments of error on appeal because he failed to object to the magistrate's findings of fact and conclusions of law, and further failed to provide the trial court with a transcript of the hearing. Accordingly, we are limited to a review of the jurisdictional issues he raises in his first assignment of error, and a review of the face of the magistrate's decision reveals no "error of law or other defect." Moreover, in light of the tortured history of the Hards' case and the multitude of collateral cases it has spawned, it is worth noting that our review of the entire record before us finds Mr. Adams' arguments are still without merit. *Page 7 
 {¶ 22} Exclusive Jurisdiction of the Probate Court and Agent for theEstate
 {¶ 23} In his first assignment of error, Mr. Adams makes various arguments concerning the trial court's jurisdiction over this case. What can be discerned from the convoluted arguments in his brief is that he believes the probate court has exclusive jurisdiction over Mr. Wilson's claim for attorney fees. He contends that the consultation was related to the Hards' guardianship/estate case, or cases, and that he was merely a "messenger of the estate," thus no personal liability could arise.
 {¶ 24} Our review, however, reveals otherwise. Mr. Adams was not seeking, and could not be seeking, representation on behalf of the Hards' estate. Rather, from what can be gleaned from the record and procedural history, he was seeking personal legal advice during the consultation and possible representation for the future. He was, in effect, seeking a second opinion as to the Hards' guardianship case globally and the serious issues relating to his wife's individual culpability and exposure for her actions or failures both during the time she served as guardian of the estate and after she was removed. As numerous cases have been filed in at least three different counties that concern or are related to Ms. Hards' estate and guardianship, Mr. Adams fails to state exactly which probate court he believes would, in his estimation, have proper jurisdiction over this matter, nor does he state how the advice he sought benefited or solely concerned the Hards' estate. He utterly fails to point to any evidence establishing his ability to "represent" the estate for this consultation.
 {¶ 25} Obviously, he did not have the power to do so. Quite simply, this is not a "probate fee claim case," or a case of agency, apparent or otherwise, as Mr. Adams argues, but a case of unpaid attorney fees for a consultation that was legitimately contracted for beforehand. We are forced to address this jurisdictional argument, as it *Page 8 
cannot be waived, although we note it was twice addressed below as this argument was the basis for Mr. Adams' motion to dismiss, and specifically addressed in the magistrate's decision, which the trial court adopted in full.
 {¶ 26} As we reviewed in In re Hards: "[i]n several recent cases, the Supreme Court has elaborated upon the circumstances when a court's judgment is void for want of jurisdiction to adjudicate a case (subject matter jurisdiction) and when a court's judgment is voidable for want of jurisdiction over a particular case. In re J.J., 111 Ohio St.3d 205,2006-Ohio-5484, ¶ 10-15; Pratts v. Hurley, 102 Ohio St.3d 81,2004-Ohio-1980, ¶ 10-12. Jurisdiction over a particular case `encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' Pratts at ¶ 12, quoting State v. Parker, 95 Ohio St.3d 524, 2002-Ohio-2833, ¶ 22 (Cook, J., dissenting). `Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, * * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' Id., quoting State ex rel. Pizza v. Rayford (1992) 62 Ohio St.3d 382,384." Id. at 175 Ohio App.3d 168, 2008-Ohio-630, ¶ 50.
 {¶ 27} There is no question that the court's jurisdiction is "perfect" in this case. Mr. Adams cites to R.C. 2113.36, in making his claim that the court is without subject matter jurisdiction to hear this case. Pursuant to R.C. 2113.36, the probate court is vested with exclusive jurisdiction to determine the ultimate question of what constitutes reasonable attorney fees that are paid by an executor as an expense of administration. Mr. Adams is correct in his citation of the rule, but we are left puzzled by this argument, *Page 9 
however, as Mr. Adams is not, and was never a fiduciary of the Hards' estate. In fact, at the time Mr. Adams sought Mr. Wilson's advice, it is apparent that his wife, Mrs. Adams, had been removed as the guardian of the estate.[1]
 {¶ 28} Further, in order for fees to be paid out of estate assets, the legal counsel sought must be shown to benefit the estate. In re:Hards, 11th Dist. No. 2002-L-032, 2003-Ohio-1207, ¶ 18. As Mr. Wilson was never retained to represent the estate, or Mrs. Adams, or even Mr. Adams in regard to the administration of the estate, this rule has no bearing on the instant case.
 {¶ 29} The record is clear that Mr. Adams sought legal advice from Mr. Wilson on a number of different issues tangentially related to the Hards' guardianship litigation, specifically the issues that pertained to his wife, and most notably for a contempt citation Mrs. Adams was possibly facing. Further, and more fundamentally, he was informed prior to the 3.2 hour consultation that Mr. Wilson billed at an hourly rate of $195, and that the consultation would be charged accordingly. Thus, when Mr. Adams appeared for the consultation, where indeed, legal counsel and advice was given, a legitimate contractual relationship had been formed for Mr. Wilson's professional time. Ultimately, Mr. Wilson was not retained, and Mr. Wilson sent him a bill solely for the consultation.
 {¶ 30} As Mr. Adams submitted no evidence to contradict Mr. Wilson's claim as to his rate, time spent, and the nature of the consultation, or to support his allegation that this was a claim against the Hards' estate, we are left puzzled with his argument that the probate court has exclusive jurisdiction over this matter, and that he was merely *Page 10 
an agent for the representative of "the estate." There is no question this case was properly within the subject matter jurisdiction of the Painesville Municipal Court.
 {¶ 31} Mr. Adams' first assignment of error is without merit.
 {¶ 32} Messenger of the "Estate" and Due Process UponCross-Examination Arguments
 {¶ 33} As already noted, Mr. Adams failed to object to the magistrate's finding, and failed to provide the trial court with a transcript to the hearing, thus he has waived his last two assignments of error in this appeal. Without proper objections and a transcript of the hearing filed with the transcript we are bound by the record, and we do not find any error or defect on the face of the magistrate's decision. In any case, it is worth mentioning that Mr. Adams submitted no evidence below to support these specious arguments, or to rebut Mr. Wilson's testimony. Further, we cannot consider arguments relating to Mr. Wilson's cross-examination below when Mr. Adams failed to file objections and when a transcript of such was not submitted to the trial court for its review.
 {¶ 34} Mr. Adams' assignments of error are without merit.
 {¶ 35} The judgment of the Painesville Municipal Court is affirmed.
DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur.
[1] See In re: Hards, 175 Ohio App.3d 168, 2008-Ohio-630, ¶ 2-29, which indicates that a successor guardian was appointed for the Hards' estate in 2001, and that at that time, Mrs. Adams was retained as guardian of Hards' person, only, until her death in Geauga County in 2002. *Page 1