OPINION
{¶ 1} Appellant, James E. Gray, appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, finding Gray guilty, pursuant to *Page 2 
R.C. 2109.50, of concealing and embezzling assets of his aunt, Elsie Bryn, in the amount of $85,359.22. We reverse the judgment of the lower court for lack of subject matter jurisdiction.
 {¶ 2} This matter involves the assets of Mrs. Elsie Bryn, now deceased. Gray is Mrs. Bryn's nephew and was a licensed attorney from 1974 until his suspension from the practice of law on August 21, 2006. See Trumbull Cty. Bar Assn. v. Gray, 110 Ohio St.3d 1457,2006-Ohio-4291. At all times relevant to the matter herein, Mrs. Bryn was dependent on Gray because she was in her 80's — early 90's, and suffered from schizophrenia and poor eyesight, which eventually led to her complete blindness.
 {¶ 3} In late November of 1996, when Mrs. Bryn was 81 years old, Gray made application to the Trumbull County Probate Court to be appointed as Mrs. Bryn's guardian, on the grounds that she was mentally incompetent. In support of this application, Gray had Mrs. Bryn evaluated by Dr. Jose Alapatt, M.D. According to Dr. Allapatt's report, he found her to be "delusional, paranoid, mentally impaired, and having poor judgment."
 {¶ 4} On December 2, 1996, Gray prepared a general durable power of attorney, pursuant to R.C. 1337.09, in which Mrs. Bryn appointed him as her attorney-in-fact. This power of attorney was filed with the Trumbull County Recorder's Office on April 2, 1998.
 {¶ 5} On or about December 18, 1996, Gray withdrew his application for appointment as Mrs. Bryn's guardian, because, according to Gray, he had a change of heart after talking with her, because Mrs. Bryn "didn't feel like she needed it," and because he felt "she was lucid at the time." *Page 3 
 {¶ 6} Pursuant to the aforementioned power of attorney, Gray opened an account with Bank One in December, 1996, through which he conducted Mrs. Bryn's business affairs. Gray and his wife, Karen, assisted Bryn by taking her to physician appointments, shopping, and providing other household assistance on her behalf. Gray never billed Bryn for her services, and never expected to be compensated due to his relationship with her. Karen likewise stated that she never expected to be compensated for the time and/or expense revolving around Mrs. Bryn's care.
 {¶ 7} On October 5, 1998, Mrs. Bryn was moved from her home on Tod Avenue in Warren, and placed in assisted living at Grace Woods in Niles, Ohio.
 {¶ 8} On December 6, 1999, Gray drafted a second durable power of attorney, which Mrs. Bryn signed, appointing Gray as her attorney-in-fact. This second power of attorney was filed with the Trumbull County Recorder's Office on December 14, 1999.
 {¶ 9} On October 14, 2001, Mrs. Bryn was moved into assisted living at Shepherd of the Valley. Eventually she was placed into Shepherd of the Valley's nursing home facility, where she stayed until her death in August, 2006. As of February 1, 2003, Mrs. Bryn's assets were depleted and Medicaid became responsible for the costs of her long-term care.
 {¶ 10} On May 20, 2004, a guardianship application was filed on Mrs. Bryn's behalf by Senior Rights, on the basis of Mrs. Bryn's incompetence. The probate court granted this application, establishing a guardianship of the person and for the estate of Mrs. Bryn, and appointed Joshua Garris of Guardianship Protective Services, Inc., as guardian of the estate. Once the guardianship was effectuated, Gray's powers of attorney were no longer in effect. *Page 4 
 {¶ 11} Subsequent to the appointment of Mrs. Bryn's guardian, an investigation commenced regarding Gray's handling of her assets. The court appointed Charles L. Perkins and Robert G. Kroner, Jr., as Special Investigators and Special Commissioners. Attorney Randall Rudloff was appointed as Counsel for Ward on behalf of Mrs. Bryn.
 {¶ 12} On May 16, 2006, Judge Thomas Swift, on the court's own motion, filed a concealment of assets complaint against Gray, pursuant to R.C. 2109.50. The court conducted a hearing on this matter on May 22, 2006.
 {¶ 13} On May 24, 2006, the trial court issued a judgment entry, finding that there was evidence to support the filing of the complaint for concealed assets and the issuance of a citation. The court held that, as Mrs. Bryn's attorney-in-fact, Gray was in a fiduciary relationship with her, and thus had fiduciary obligations and duties to her "as to the manner in which he conducted her financial affairs." The judgment further held, based upon Gray's testimony, that he had used his position and power as Bryn's attorney-in-fact to spend and convert money for his own benefit and purposes, and such conduct constituted "concealment/embezzlement of Elsie Bryn's money."
 {¶ 14} The court made further findings from the evidence presented "that there are numerous transactions as more fully set forth in * * * Exhibits 1 and 2, and 5 through 25, in which * * * Gray wrote checks to himself which he cashed or deposited to his own accounts, wrote checks to cash which he then cashed, and wrote checks to third parties, all of which are highly questionable, suspect[,] and to date unexplained and/or undocumented."
 {¶ 15} Based upon Gray's testimony that he had records supporting most, if not all, of the suspect transactions, the court ordered that he produce all such records *Page 5 
including, but not limited to: "all cancelled checks, deposit records and bank statements for the Power of Attorney account * * * created December 10, 1996 as Bank one Account No. 612978718; all receipts or bills for cash or check expenditures [Gray] made on behalf of Elsie Bryn; all real estate sale settlement statements from * * * [Gray's] sale of the properties described in trial exhibits 27, 28 and 29; any other records concerning [Gray's] management and handling of the funds and financial affairs of Elsie Bryn; [Gray's] own personal bank account records (including bank statements, deposit receipts, and cancelled checks) for the period [of] December 2, 1996 thru May 20, 2004 for all accounts into which [Gray] deposited any money or checks from the accounts of or belonging to Elsie Bryn; and [Gray's] credit card account from which [he] claims [to have] made expenditures on behalf of Elsie Bryn subject to reimbursement."
 {¶ 16} The court ordered that Gray be "given the opportunity to explain all of the transactions described * * * and produce all of the original records supporting same * * * by close of business [on] Tuesday, May 30, 2006 by delivering the originals of all such records to the Trumbull County Probate Court together with an inventory list." The court ordered that any such records delivered by Gray "shall be kept secured and in the custody of the Trumbull County Probate Court for purposes of permitting the Court's Special Investigators and Commissioners * * * to review, analyze and copy such records." The order provided that Gray "may be present during such review and analysis of the records if he so chooses," and that he "fully cooperate with [the] Investigators/Commissioners in answering any questions * * * and in providing to them such additional records and materials they may request." *Page 6 
 {¶ 17} On June 2, 2006, Bryn's guardian, through Attorney Rudloff, filed a motion to find Gray in contempt of the May 24, 2006 judgment, on the basis of his failure to produce the records and documents surrounding his handling of Bryn's financial affairs.
 {¶ 18} On June 14, 2006 the probate court held a contempt hearing. After taking testimony that some of the required documents had been produced, the court found that Gray had, in large part, not complied with the court's order. Pursuant to an agreement by the parties, the contempt hearing was recessed, and the court ordered the matter rescheduled.
 {¶ 19} On August 6, 2006, Mrs. Bryn died. On August 14, 2006, the trial court issued a judgment entry terminating guardianship, waiving the final accounting, and revoking the letter of guardianship in Probate Court Case No. 1996 GDP 0256 ("the guardianship case").
 {¶ 20} On August 17, 2006, the court, sua sponte, issued a judgment entry vacating the court's August 14, 2006 judgment in the guardianship case.
 {¶ 21} On the same date, the court conducted another hearing to determine whether Gray had complied with the court's May 24, 2006 order. Prior to this hearing, Gray's counsel made an oral motion to dismiss the concealment of assets action based upon the death of Mrs. Bryn and thecourt's August 14, 2006 entry terminating guardianship.
 {¶ 22} On August 29, 2006, the trial court issued a judgment entry denying Gray's motion to dismiss. The August 29, 2006 entry stated, in relevant part, as follows:
 {¶ 23} "The court being fully advised [of] the premises [for the motion] finds that the concealment of assets action was initiated by the court pursuant to R.C. 2109.50. *Page 7 
The court finds that by judgment entry dated May 24, 2006, Defendant, James E. Gray, was found to have converted, concealed and embezzled money owned by the Guardianship of Elsie Bryn for his own benefit and purposes. The court finds that this final judgment was not appealed by the Defendant and would be res judicata to further litigation of the issue. Therefore, the Court finds that the sole issue remaining before the Court is the amount of money owed by Defendant to the Guardianship of Elsie Bryn." (Emphasis added).
 {¶ 24} "The Court being fully advised in the premises finds that an estate proceeding has been filed captioned In the Matter of the Estateof Elsie Bryn, Deceased, Case No. 2006 EST 0804, and that Joshua M. Garris has been appointed Special Administrator."
 {¶ 25} "The court finds that the funds Defendant owes to Elsie Bryn occurred during her lifetime in the guardianship and the funds Defendant owes to her probate estate are identical. The court further finds that the right to recover the concealed and embezzled funds was not extinguished by the death of Elsie Bryn. See Kelly v. Smith (1964)7 Ohio App.2d 142. The court does not find the motion to dismiss well taken." (Emphasis added).
 {¶ 26} "Therefore, it is ORDERED that the motion to dismiss be, and is hereby, denied."
 {¶ 27} Gray appealed this decision to our court. On May 11, 2007, we dismissed Gray's appeal, finding that the judgment of August 29, 2006, was not a final appealable order as contemplated by R.C. 2505.02(B). SeeSwift v. Gray, 11th Dist. No. 2006-T-0106, 2007-Ohio-2302, at ¶ 16. *Page 8 
 {¶ 28} On July 3, 2007, Gray filed motion to dismiss with the court, pursuant to Civ. R. 12(B)(1) and (6), stating that he was entitled to a dismissal "because the court lacks jurisdiction over the subject matter and there is no claim upon which relief could be granted." On July 5, 2007, the Attorney Rudloff filed a memorandum contra to Gray's motion to dismiss.
 {¶ 29} On July 5 and 6, 2007, the court held further proceedings on the concealment of assets claim, in order to permit Gray to explain or justify his transactions involving Mrs. Bryn's assets, and in order to determine the actual amount of assets embezzled and concealed.
 {¶ 30} On July 19, 2007, the court entered judgment denying Gray's motion to dismiss, finding that the court had "subject matter jurisdiction for purposes of concluding the administration of Elsie Bryn's guardianship estate, making a determination as to the exact amount of embezzled/concealed assets owing to the estate by Defendant James E. Gray and thereafter overseeing the filing of the final and distributive guardianship account."
 {¶ 31} On August 9, 2007, the trial court issued its judgment finding Gray guilty of having concealed, embezzled, conveyed away, or possessed monies from Mrs. Bryn's guardianship estate in the amount of $85,359.22, and that "his actions were willful, wanton, and intentional." The court ordered "that judgment be rendered in favor of Joshua M. Garris, Guardian of the Estate of Elsie V. Bryn, Deceased, and subject to the interest of her estate in the amount of $85,350,22 for money concealed, embezzled, [or] conveyed away * * *." The court further ordered "that Plaintiff's attorney fees are hereby taxed as costs and shall be payable upon application to and approval by the court." The *Page 9 
court also ordered "that the costs of the Special Court Investigator's services previously approved by the Court in the amount of $10,093.68 are hereby taxed as costs."
 {¶ 32} It is from this judgment that Gray timely appeals, assigning the following as error for our review:
 {¶ 33} "[1.] The Probate Court erred in denying Mr. Gray's Motion to Dismiss for lack of subject matter Jurisdiction.
 {¶ 34} "[2.] The Probate Court abused its discretion in ruling that James Gray was guilty of having concealed, embezzled or conveyed away or possessed Elsie Bryn's assets.
 {¶ 35} "[3.] The Probate Court abused its discretion in failing to afford James Gray due process rights requiring a presumption of innocence and the right to an impartial and unbiased judge."
 {¶ 36} In his first assignment of error, Gray argues that the trial court erred by not dismissing a concealment of assets action initiated pursuant to a guardianship estate under R.C. 2109.50, since it lacked subject matter jurisdiction to continue with proceedings following the death of the ward and the entry of judgment terminating the guardianship estate, which contained both a waiver of the final accounting and a revocation of the letters of guardianship. Stated more plainly, Gray argues that Bryn's death, and the court's acknowledgment thereof by means of the judgment entry terminating the guardianship,divested the court of jurisdiction to continue the action as constituted. Based upon the unique circumstances presented by this case, we agree.
 {¶ 37} Probate courts are courts of limited jurisdiction and may hear only those types of cases expressly authorized by the applicable statutes. Rudloff v. Efstathiadis, *Page 10 
11th Dist. No. 2002-T-0119, 2003-Ohio-6686, at ¶ 6, citing Schucker v.Metcalf (1999), 22 Ohio St.3d 33, 34; Vogler v. Donley (Dec. 16, 1998), 7th Dist. No. 97 BA 63, 1998 Ohio App. LEXIS 6175, at *4.
 {¶ 38} "The existence of the court's own subject-matter jurisdiction in a particular case poses a question of law which the court has the authority and responsibility to determine." Burns v. Daily (1996),114 Ohio App.3d 693, 701 (citations omitted). "We review that determinationde novo without any deference to the conclusion reached below." Id.
 {¶ 39} Subject matter jurisdiction "cannot be waived and may be raised at any time," nor can it be "conferred by consent." Lisboa v.Karner, 167 Ohio App.3d 359, 2006-Ohio-3024, at ¶ 12. Under Civ. R. 12(B)(1), a court may not dismiss a case for lack of subject matter jurisdiction if the plaintiff has alleged "any cause of action which the court has authority to decide." Newell v. TRW, Inc./Kelsey-Hayes,Co. (2001), 145 Ohio App.3d 198, 200.
 {¶ 40} A R.C. 2109.50 proceeding is a "special statutory proceeding" which is "quasi criminal in nature." In re Fife (1956),164 Ohio St. 449, 453. R.C. 2109.50 "confers upon the probate court jurisdiction to conduct summary proceedings to discover and retrieve specific property or proceeds or value thereof that belong to a trust estate."Burns, 114 Ohio App.3d at 702, citing In re Black (1945),145 Ohio St. 405, at paragraph one of the syllabus. "A probate court has jurisdiction to entertain an action against an attorney-in-fact for concealed or embezzled assets withdrawn with a power of attorney." Burwell v.Rains, 11th Dist. No. 2004-T-0042, 2005-Ohio-1893, at ¶ 15, citingFox v. Stockmaster, 3rd Dist. Nos. 13-01-34 and 13-01-35, 2002-Ohio-2824, *Page 11 
at ¶ 63. The purpose of the statute is to "facilitate the administration of estates by expeditiously bringing into such estates those assets which rightfully belong there." Fife, 164 Ohio St. at 453 (citations omitted).
 {¶ 41} In addition, a probate court has jurisdiction over an action brought pursuant to R.C. 2109.50 to recover funds passed to a third party by inter vivos transaction where the validity of the underlying transfer is challenged. Efstathiadis, 2003-Ohio-6686, at ¶ 8. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 407. "Thus, a plaintiff has stated an actionable cause under [the statute] if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it." Id.
 {¶ 42} R.C. 2109.50 provides, in relevant part, as follows:
 {¶ 43} "Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a personinterested in such trust estate * * * against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall * * * compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint. * * * The probate court may initiate proceedingson its own motion, [and] shall forthwith proceed to hear and determine the matter." (Emphasis added).
 {¶ 44} In the case sub judice, the complaint, in relevant part, read as follows: *Page 12 
 {¶ 45} "The court, on its own motion pursuant to R.C. 2109.50, assuperior guardian, and upon the review of the initial report of Charles L. Perkins, Special Court Investigator and Special Commissioner finds that it may have good cause to suspect that James E. Gray * * * may have willfully and fraudulently concealed, embezzled, or conveyed away or may have been in possession of moneys, chattels, or choses in actionbelonging to the Guardianship of the Estate of Elsie V. Bryn." (Emphasis added).
 {¶ 46} R.C. 2111.50(A) states that "[a]t all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships. * * * [T]he control of a guardian over the person, the estate or both of the his ward is limited to the authority that is granted to theguardian by the Revised Code, relevant decisions of the courts of thisstate, and orders or rules of the probate court." R.C. 2111.50(A)(1) and (A)(2)(a) (emphasis added); see also In re Clendenning (1945),145 Ohio St. 82, 93 ("The court having jurisdiction of a guardianship matter is said to be the superior guardian, while the guardian himself is deemed to be an officer of the court.") (citation omitted).
 {¶ 47} While R.C. 2109.50 allows the court to initiate the proceedings by its own motion and R.C. 2111.50 provides Judge Swift, as thesuperior guardian of wards, the inherent authority to bring the caseas a party, it nevertheless must logically follow that such grants of authority must flow from the existence of a valid guardianship of a ward.
 {¶ 48} There is no doubt that a valid guardianship was in existence at the time the instant case was initiated. However, this was, unfortunately for all parties concerned, not the case by the time a final judgment was rendered on August 9, 2007. *Page 13 
 {¶ 49} It is well-settled rule of law that, generally, "the legal effect of a guardianship ends upon the death of the ward, and * * * the executor of the remaining estate immediately takes title to the assets."State ex rel. Hards v. Klammer, 11th Dist. No. 2004-L-189,2005-Ohio-2655, at ¶ 14, citing Simpson v. Holmes (1992),106 Ohio St. 437, 439. The Ohio Supreme Court, in Simpson held that the "sole duty" of the guardian after the death of the ward was "to render an account ofhis stewardship up to the date of his ward's death."106 Ohio St. at 439; accord State ex rel. Hards v. Klammer, 110 Ohio St.3d 104,2006-Ohio-3670, at ¶ 12 ("[A] guardian has the power after the ward's death to make a proper accounting and settlement of any acts taken in regard to the ward's assets," and thus "even after the ward's death, `those powers and duties necessarily involved in the proper accounting and settlement of the [guardianship] continue.") (citations omitted).
 {¶ 50} "R.C. 2109.302(A) provides that `every guardian or conservator shall render a final account within thirty days after completing theadministration of the ward's estate.'" This requirement necessarily provides an independent grant of jurisdiction to the probate court for the consideration and settlement of a guardian's final account." In reHollins, 114 Ohio St.3d. 434, 2007-Ohio-4555, at ¶ 27 (emphasis added). Our court has noted that this "concept of residual authority following the ward's death has also been extended to the court which imposed the guardianship" with regard to matters such as "the guardian's fee application for herself and her attorney." Hards, 2005-Ohio-2655, at ¶ 15 (citation omitted). However, once the guardianship ceases, the probate court retains jurisdiction only "for the limited purpose ofsettling the guardian's final *Page 14 accounting," and not "over all matters pending before them."Hollins, 2007-Ohio-4555, at ¶ 29 (emphasis added).
 {¶ 51} After Elsie Bryn's death on August 6, 2006, the court lost jurisdiction for all matters except settling the guardian's final accounting. Even if we were able to assume that the settlement of the guardian's R.C. 2109.50 action were in furtherance of settling Mrs. Bryn's final accounting, the probate court foreclosed this possibility when it entered judgment terminating the guardianship on August 14, 2006. That judgment read as follows:
 {¶ 52} "This matter came before the court upon the motion of the guardian in the above-captioned matter. The court has been notified that the ward died on August 6, 2006, and therefore the guardianship is terminated, the filing of the final account waived, and costs waived. The letters of guardianship are also hereby revoked."
 {¶ 53} "SO ORDERED."
 {¶ 54} It is axiomatic "that a court speaks exclusively through its journal entries." Id. at ¶ 30 (citations omitted). Since the aforementioned order unequivocally terminated the guardianship andwaived the final accounting and costs, the guardianship legally ceased to exist and the court was divested of subject matter jurisdiction vis à vis the guardianship. Thus, the August 17, 2006 judgment entry purporting to "vacate" the August 14, 2006 judgment in the guardianship case, as well as the August 9, 2007 judgment in the instant case awarding damages, were nullities. See In re J.J., 111 Ohio St.3d 205,2006-Ohio-5484, at ¶ 10 ("[W]hen the trial court lacks subject-matter jurisdiction * * * its judgments are] void.") (citation omitted). *Page 15 
 {¶ 55} Nevertheless, the guardian argues that he retained jurisdiction to settle the matter because "the concealment action was litigated and a finding of guilt of concealment/embezzlement made against Gray during Bryn's lifetime." In essence, he argues that the May 24, 2006 judgment entry constituted a "final order" made prior to Mrs. Bryn's death, thus affording the court jurisdiction to "wind down" her affairs. We disagree.
 {¶ 56} R.C. 2109.52 provides, in pertinent part, as follows: "When passing on a complaint under section 2109.50 of the Revised Code, the probate court shall determine * * * whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of money, chattels, or choses in action of the trust estate. * * * If the person found guilty is the fiduciary, the probate court shallforthwith render judgment in favor of the state against him for suchamount or value, together with penalty and costs as provided in this section." (Emphasis added).
 {¶ 57} Our review of the May 22, 2006 order convinces us that the court made a finding of guilt sufficient under R.C. 2109.50. However, the court did not "render judgment" for a "definite amount or value" as required by R.C. 2109.52 until August 9, 2007, almost a year after the guardianship had legally ceased to exist, and subsequent to our remand of Gray's earlier appeal. In that appeal, we noted that the court's May 22, 2006 order "did not contain any determination as to the exact amount [Gray] had taken." Swift, 2007-Ohio-2302, at ¶ 3.
 {¶ 58} In dismissing the prior appeal for lack of a final appealable order, we held that although R.C. 2109.50 actions constituted a "special proceeding," pursuant to the R.C. 2505.02(B)(2) statute, no "substantial right" had yet been affected since the merits *Page 16 
of Gray's argument could be "properly reviewed at the conclusion of thisproceeding." Id. at ¶¶ 7, 13. (emphasis added). In other words, an R.C. 2109.50 judgment cannot be final, pursuant to R.C. 2109.52, until such time as a judgment is rendered in a definite amount.
 {¶ 59} This is not to say that a R.C. 2109.50 concealment action, or other cause of action, cannot still be brought against Gray, since an estate proceeding was instituted subsequent to Mrs. Bryn's death, with Joshua Garris appointed by the court as special administrator. However, an executor or administrator's "right to make complaint, or cause of action, concerning concealment of assets is not as successor to or transferee of the gurardian's right to make complaint, or cause of action, but is separate from and independent thereof (the executor's [or administrator's] right is as respects assets of his decedent'sestate, that of the guardian is as respects assets of the ward.)" In reKreitzer (1964), 7 Ohio App.2d 142, at paragraph two of the syllabus (emphasis sic). Thus, while such cause of action now properly belongs to the representative of Mrs. Bryn's estate, it would be "error for a court to order substitution of the executor [or administrator] of a ward's estate as party in interest in place of the guardian of such ward in matters pertaining to a complaint filed by such guardian, prior to theward's death, alleging the concealment of `monies, chattels or choses in action belonging to said ward's estate.'" Id. at paragraph three of the syllabus (emphasis added).
 {¶ 60} Based on the foregoing analysis, Gray's first assignment of error has merit, and the trial court erred in not dismissing the cause of action for lack of subject-matter jurisdiction. *Page 17 
 {¶ 61} Since Gray's second and third assignments of error address the merits of a judgment determined to be void by this opinion, they are rendered moot. See App. R. 12(A)(1)(c).
 {¶ 62} The judgment of the Trumbull County Court of Common Pleas is reversed. Costs to be taxed against appellees.
COLLEEN MARY OTOOLE, J., concurs,
MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.