{¶ 73} "`"`Civil contempt' is defined as *** failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party." *** The purpose of civil contempt is to impose sanctions in order to coerce the individual to comply with the court order that was previously violated. *** A trial court's finding of civil contempt must be supported by clear and convincing evidence. *** Clear and convincing evidence implies that the trier of fact must have a firm conviction or belief that the facts alleged are true. ***'" Poss v.Morris, 11th Dist. No. 2004-A-0093, 2006-Ohio-1441, at ¶ 29. (Citations omitted.)
 {¶ 74} However, an order finding someone guilty of contempt for failure to perform an act directed by a court is void as a basis for punishment unless it was within the power of the person to perform the act. Only if that inability arises from the person's own willful act is this not an excuse. Cf. Poss at ¶ 31.
 {¶ 75} "R.C. 2109.302(A) provides that `every guardian or conservator shall render a final account within thirty days after completing the administration of the ward's estate.' This requirement necessarily provides an independent grant of jurisdiction to the probate court for the consideration and settlement of a guardian's final account *** [.]"In re Hollins, 114 Ohio St.3d 434, 2007-Ohio-4555, at ¶ 27. This court has noted that this "concept of residual authority following the ward's death has also been extended to the court which imposed the guardianship," regarding such matters as "the guardian's fee application for herself and her attorney." Hards, 2005-Ohio-2655, at ¶ 15, citingIn re Schueneman (1948), 36 O. O. 513. However, once a guardianship ceases, *Page 25 
probate courts retain jurisdiction only "for the limited purpose of settling the guardian's final accounting," and not "over all matterspending before them." Hollins at ¶ 29. (Emphasis added.)
 {¶ 76} In this case, the trial court's own judgment entry reveals appellants attempted to file the requisite document several times. Each time, the trial court rejected the document because of a pending appeal, or alleged deficiencies. The first attempt by Appellant Adams to file her accounting was in the spring of 2002. There are assertions in the record that this document was incomplete. However there was sufficient evidence in the record to construct the remaining assets. Furthermore, it would have been simple indeed to get copies of any documents detailing assets filed regarding the ward's estate in Geauga County. The need to pursue continuous contempt proceedings was clearly unreasonable.
 {¶ 77} Further, once a guardian is removed for alleged malfeasance, she is no longer a party, nor can she transfer assets within the jurisdiction of another court. The trial court herein effectively denied Appellant Adams' attempts to file an accounting on three separate occasions, and ordered her to produce assets under the jurisdiction of the Geauga County Probate Court.
 {¶ 78} And yet, the record shows that there had been several accountings filed during the pendency of the proceedings. A special commissioner had been appointed, and expended considerable time and energy, while earning considerable fees, in resolving various discrepancies, and litigation between the guardian and others involved in the guardianship of the estate. Consequently, there was sufficient evidence for Mr. Meraglio to determine the nature of the remaining assets. Mr. Meraglio served as *Page 26 
guardian for a few weeks before the ward's death.[6] The docket indicates he, effectively, did nothing during that time. However, Mr. Spotz's report and recommendations had been adopted by the trial court February 4, 2002; and the ward's estate was opened in Geauga County in May of 2002. Again, it would have been simple for Mr. Meraglio to get a copy of the initial paperwork filed in Geauga County, and compare it with any of the various documents that had been rejected by the clerk of the trial court, based, evidently, on some arbitrary, gate-keeping procedure implemented by that court. Any discrepancies would be for the heirs and next of kin.
 {¶ 79} It is clear from the record that this case really concerns the generation and collection of fees, to be taken from the ward's assets and denied her heirs. The proper procedure for the trial court would have been to allow the filing of an accounting, despite any pending appeal, then await the filing of a motion to strike, or review the filing for deficiencies and discrepancies — not to reject it, then hold a party in contempt. Given the close proximity of the ward's death to the filing of the special commissioner's report, the trial court could have accepted the accounting filed, and compared everything with the amounts set forth in the estate opened for the ward in Geauga County.
 {¶ 80} Alternately, this could have proceeded under a concealment of asset charge, brought pursuant to R.C. 2109.50. The purpose of this statute "is to provide a speedy and effective method of discovering assets belonging to an estate and securing possession of such assets."Harpster v. Castle (June 28, 1993), 5th Dist. No. CA 1022, 1993 Ohio App. LEXIS 3414, at 3. But continuing to allow the rack up of fees in contempt hearings for two or more years for a guardian who was appointed only weeks before the ward's death was an abuse of discretion. A guardian's role is not that of *Page 27 
special prosecutor. Nor does prosecuting the former guardian in contempt qualify as winding up the estate.
 {¶ 81} "`A guardian is chargeable in his accounts not only with the estate of his ward, real and personal, and the proceeds thereof which actually came into his hands, such as rents and the proceeds of a sale of the ward's property, but also with money or property lost by reason of his negligence or failure of duty, or which he might have recovered and received by the exercise of reasonable diligence and ordinary prudence.'" In re Zimmerman (1943), 141 Ohio St. 207, 225-226.
 {¶ 82} However, in this case, Mr. Meraglio was not responsible for assets never transferred to him. R.C. 2109.50 is not limited to concealment. That transactions were not hidden is irrelevant.
 {¶ 83} "*** [A]n executor's or administrator's `right to make complaint, or cause of action, concerning concealment of assets is not as successor to or transferee of the guardian's right to make complaint, or cause of action, but is separate and independent thereof (the executor's [or administrator's] right is as respects assets of hisdecedent's estate, that of the guardian is as respects assets ofthe ward.)' In re Keitzer (1964), 7 Ohio App.2d 142, ***, at paragraph two of the syllabus (emphasis sic)." Swift v. Gray, 11th Dist. No. 2007-T-0096, 2008-Ohio-2321, at ¶ 59. (Parallel citation omitted.)
 {¶ 84} It is clear from the record that the assets never came into Mr. Meraglio's hands, and it was not his duty to collect them. Once the contempt proceedings began, he merely became a fact witness, not a party actively participating in the trial court's contempt litigation. *Page 28 
 {¶ 85} "R.C. 2111.50(A) states that `[a]t all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships. (***) [T]he control of a guardian over the person, the estate or both of the *** ward is limited to the authority that is granted to theguardian by the Revised Code, relevant decisions of the courts of thisstate, and orders or rules of the probate court.' R.C. 2111.50(A)(1) and (A)(2)(a) (emphasis added); see also In re Clendenning (1945),145 Ohio St. 82, 93, *** (The court having jurisdiction of a guardianship matter is said to be the superior guardian, while the guardian himself is deemed to be an officer of the court.') (citation omitted).
 {¶ 86} "While R.C. 2109.05 allows the court to initiate the proceedings by its own motion and R.C. 2111.50 provides [the probate court], as the superior guardian of wards, the inherent authority to bring the case as a party, it nevertheless must logically follow that such grants of authority must flow from the existence of a validguardianship of a ward." Swift at ¶ 46-47. (Parallel citation omitted.) (Emphasis sic.)
 {¶ 87} In this matter, the trial court allowed the outrageous accumulation of fees in contempt proceedings that it literally orchestrated by its practice of allowing the guardian to run the litigation, and its procedure of rejecting filings. Perhaps the trial court or its clerk was under the (erroneous) assumption that accepting documents filed during the pendency of an appeal is improper. Our prior decisions in this matter did not authorize the freelance prosecution of contempt to be included in the winding up of the guardianship. Contempt is a separate and distinct cause of action. Mrs. Hards' heirs and beneficiaries should succeed to her estate — not attorneys racking up fees. The *Page 29 
winding up of a deceased ward's guardianship should not involve attorneys becoming vested in fees derived from the estate, and relentlessly pursuing contempt proceedings to satisfy that interest. At some point, common sense must prevail.
 {¶ 88} I respectfully dissent.
[6] The legitimacy of his appointment is irrelevant, and not subject of this appeal. *Page 1